**Clinton S. MATTHEWS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Action No. 2:93cr66.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 13, 1996.

Clinton S. Matthew, Lewisburg, PA, pro se.

Kent P. Porter, Assistant United States Attorney, Norfolk, VA, for Defendant.

## OPINION & ORDER

MORGAN, District Judge.

This matter is before the Court on Petitioner Clinton S. Matthews' (a/k/a Clinton S. Matthew) ("Matthews") Motion for Return of Property filed October 26, 1995 pursuant to Federal Rule of Criminal Procedure 41(e).[1] Matthews alleges that his property was seized without a warrant and in violation of his Fourth Amendment rights. He demands the return of his property.[2] (Affirmation in Support of Motion for Return of Property ("Affirmation").) On November 16, 1995, the United States filed its response to Defendant's motion as well as the declaration of William J. Snider, Forfeiture Counsel of the Drug Enforcement Administration ("DEA"), and exhibits A, B1, B2, C1, and C2.[3]

■ Upon review of the pleadings, affidavits, and exhibits, the Court DENIES petitioner's Motion for Return of Property for the reasons hereinafter outlined.[4]

## I. FACTUAL & PROCEDURAL HISTORY

Petitioner Matthews was one of a number who were included in April of 1993 in a multi-count indictment which charged him with the distribution of narcotics and a conspiracy to distribute the same. 21 U.S.C. § 846 (1984 & Supp.1995); 21 U.S.C. § 841(a)(1) (1984 & Supp.1995). Matthews was convicted by a jury on some of the charged offenses and was consequently sentenced to life in prison by this Court. Matthews' current petition arises out of his contacts with federal officers during the pendency of their investigation and his various arrests.

Matthews claims in his petition that assorted items were seized and forfeited by federal officers. Chronologically, the first seizure is said to have occurred on April 5, 1991 and to have been effected by Federal Immigration and City of Portsmouth officers. (Affirm. ¶¶ 2–5.) The alleged seizure included a blue 1987 Nissan 240SX belonging to his girlfriend, $4759.00 in United States currency hidden in a compartment of the car, and a Shearling coat which was in the trunk of the car and which purportedly contained $750.00 in United States currency in one of its pockets. Notably, while Matthews asserts that he has a legal right to the return of these items, he does not claim legal ownership in any of them; he merely claims that he was "sitting in a Blue Nissan Automobile ... [when he was] taken into custody"—the same automobile from which these other items purportedly were confiscated—and that he had placed the coat in the trunk. (Affirm. ¶¶ 8, 20.)[5] In accordance with 19 U.S.C. § 1607, Matthews was given proper notice of

---

1. Rule 41(e) of the Federal Rules of Criminal Procedure provides that "a person aggrieved ... by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property." Fed.R.Crim.P. 41(e).

2. Namely, petitioner claims that the following property was seized: one blue 240SX Nissan automobile belonging to his girlfriend Ms. Gail Brewster; a total sum of ten thousand five hundred and nine dollars ($10,509.00) in United States currency; and one brown Shearling coat. (Affirm. at 1.)

3. These exhibits comprise the documentation that the DEA possesses regarding the forfeitures they acknowledge.

4. The Court is aware of Matthews' status as a *pro se* petitioner and it therefore construes his complaint liberally. *Gordon v. Leeke,* 574 F.2d 1147, 1151–52 (4th Cir.1978), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).

5. Matthews specifically asserts that "[i]t is a fact that the petitioner placed into the trunk of the Blue Nissan, a Brown Sherling [sic] coat with the sum of $750.00, in the pocket.... [and] [i]t is a fact that Officer [sic] Larcen and Socher of the Immigration and Naturalization Drug Task Force, confiscated the Blue Nissan, with all of its contents." (Affirm. ¶¶ 20, 21.)

the seizures of some of the property[6] and of the fact that the DEA was instituting forfeiture proceedings on these items.[7] *See also* 21 C.F.R. § 1316.75 (1992).

The second alleged seizure occurred on April 24, 1993 during his arrest on the indictment for which he is now in prison. A search was conducted at his most current residence in Norfolk, Virginia and two sums of money were seized: $4000.00 in United States currency discovered in an air conditioning unit and $1073.00 in United States currency confiscated from Matthews' person. (U.S. Resp. at 2.) Unlike the items seized in 1991, Matthews does in fact claim an ownership interest in these two .sums seized in 1993. Adhering to 19 U.S.C. § 1607, the DEA gave Matthews proper notice of its seizure and of its intent to forfeit this property.[8] *See also* 21 C.F.R. § 1316.75.

Matthews never responded to these notices and publications; thus, the Drug Enforcement Administration "adopted" the $4759.00 seized in 1991 and the $5073.00 seized in 1993 for the institution of federal forfeiture proceedings, 21 U.S.C. § 881 (1988 & Supp.III 1991), 19 U.S.C. § 1609 (1988 & Supp.III 1991), and 21 C.F.R. § 1316.77, (Decl. of William J. Snider ("Decl.") ¶ 6.), and declared

these sums forfeited by "summary" or administrative forfeiture pursuant to 19 U.S.C. § 1609 on September 5, 1991, (Ex. B1, B2), and August 13, 1993, (Ex. C1, C2),[9] respectively. *See* 19 U.S.C. § 1607(a) (1988 & Supp.III 1991); 21 U.S.C. § 881(d); 21 C.F.R. § 1316.75. However, no record exists of any seizure or forfeiture of the remaining items claimed, specifically, the 1987 Nissan automobile, the Shearling coat, or the $750.00 allegedly in the coat pocket. (Ex. A; Decl. ¶ 6.)

## II. ANALYSIS

The United States submits three cogent grounds for its opposition to Matthews' Motion for Return of Property; however, before dealing with these grounds, the Court must first address the complex issue of jurisdiction over Rule 41(e) motions.

### A. JURISDICTION

Some question exists among the Circuits as to whether an agency's institution of administrative forfeiture over articles of property preempts a district court's jurisdiction to hear a putative owner's Rule 41(e) claim.

---

**6.** The United States admits having seized and forfeited from Matthews $4759.00 in United States currency, but denies having seized a blue 1987 Nissan 240SX, a Shearling coat, or $750.00 in United States currency purportedly in that coat. *See infra* § II.B.

**7.** Notice of the seizure of $4759.00 on April 5, 1991 was sent to both Matthews and Gail Brewster's residences on May 20 and July 22, 1991 respectively by certified mail, return receipt requested. Notice was published in the USA TODAY newspaper for three weeks beginning on May 29, 1991. Administrative forfeiture did not occur until September 5, 1991, giving Matthews three and one-half months within which to file a petition or claim. (Exs. B1, B2.)

**8.** Notice of the seizure of $5073.00 on April 24, 1993 was sent on June 28, 1993 to Matthews at both his residence and the Portsmouth City Jail where he was then incarcerated, to Gail Brewster at the residence she shared with Matthews at the time of the incident, and to Vela Hightower who also shared the same residence. Notice was mailed via certified mail, return receipt requested, and published in USA TODAY for three weeks beginning on July 7, 1993. Administrative forfeiture did not occur until August 13, 1993, giving

Matthews one and one-half months within which to file a petition or a claim. (Exs. C1, C2.) As Matthews was incarcerated at the time of the mailing of this latter notice, that mailing also contained an explanation as to how he could have filed an affidavit of indigency in lieu of the cost bond in order to contest the forfeiture action.

**9.** A declaration of forfeiture under this section shall have the same force and effect as a final decree and order or forfeiture in a judicial forfeiture proceeding in a district court of the United States. Title shall be deemed to vest in the United States free and clear of any liens or encumbrances ... from the date of the act for which the forfeiture was incurred."
19 U.S.C. § 1609(b); *see also United States v. Woodall*, 12 F.3d 791, 793 (8th Cir.1993) ("Under 19 U.S.C. § 1609, DEA's Declaration has the force and effect of 'a final decree and order' of the district court. Any court, even one of limited jurisdiction, has jurisdiction to consider the validity of its prior decrees.... The statute itself provides that the DEA Declaration is just such a decree.") (citing *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867); *Voorhees v. United States Bank*, 35 U.S. (10 Pet.) 449, 477, 9 L.Ed. 490 (1836)).

*See Linarez v. United States Department of Justice,* 2 F.3d 208, 211–13 (7th Cir.1993) *reh. den.* 1993 U.S.App. LEXIS 22563 (7th Cir.); *United States v. Price,* 914 F.2d 1507, 1510 (D.C.Cir.1990); *In re Seizure Warrant,* 830 F.2d 372, 374 (D.C.Cir.1987), *vacated sub nom. Onwuasoanya v. United States,* 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988); *United States v. Castro,* 883 F.2d 1018, 1019–20 (11th Cir.1989); *Cheung v. United States,* 1993 WL 642934 at *1, *3 (D.Md.1993). The United States Court of Appeals for the Fourth Circuit has not addressed this issue to date.

### i. Application of Rule 54(b)(5)

The weight of authority tends to support the proposition that the jurisdiction of district courts over Rule 41(e) petitions for return of property is divested where an agency initiates administrative forfeiture proceedings pursuant to 19 U.S.C. § 1607, 21 U.S.C. § 881. The basis for this conclusion largely rests in a reading of both Rules 41(e) and 54(b)(5).

▮ Rule 41(e) speaks only of a "person aggrieved by an unlawful search and seizure or by the deprivation of property"[10] having access to the district court for the district in which the property was seized. Fed. R.Crim.P. 41(e). It makes no distinction between criminal and civil forfeitures, although it does refer specifically to motions filed "after an indictment or information is filed" and dictates that a motion in that category may be "treated also as a motion to suppress under Rule 12." Fed.R.Crim.P. 41(e). The Rule is "designed to accomplish two objectives: the return of the property to its owner and, where criminal proceedings have been initiated, the suppression of illegally seized property as evidence." *Mora v. United States,* 955 F.2d 156, 158 (2d Cir.1992).

Rule 54(b)(5) addresses the applications of all of the Federal Rules of Criminal Procedure and therefore modifies Rule 41(e). The interpretation of Rule 54(b)(5)'s application to Rule 41(e) gives rise to the controversy over this Court's jurisdiction in the case.

Rule 54(b)(5) applies to "other proceedings" and states, in relevant part, that "[t]hese rules are not applicable to ... civil forfeiture of property for violation of a statute of the United States...." Fed. R.Crim.P. 54(b)(5). Furthermore, the advisory committee's notes on the rules specifically list 19 U.S.C. §§ 1602 *et seq.*—the statutes under which Matthews' property was seized—as statutes among those which govern the proceedings relating to forfeiture of property used in connection with a violation of a statute of the United States. Title 21 U.S.C. § 881, the statute under which Matthews' property was forfeited, is also exempted from the application of Rule 41(e) by Rule 54(d).[11] In other words, 19 U.S.C. §§ 1602 *et seq.* are covered by Rule 54(b)(5) and are apparently exempted from the application of Rule 41(e). Fed.R.Crim.P. 54, advisory committee's note.

Other courts have applied these Rules and have derived a "well-settled" precept that "the proper method for recovery of property which has been subject to civil forfeiture is not the filing of a Rule 41(e) Motion, but filing a claim in the civil forfeiture action." *U.S. v. Castro,* 883 F.2d at 1019 (citing *In re Seizure Warrant,* 830 F.2d at 374; *United*

---

**10.** "Property" as employed in Rule 41(e) includes "documents, books, papers and any other tangible objects." Fed.R.Crim.P. 41(g).

**11.** The notes of the advisory committee on rules comment on the 1972 addition of Rule 7(c)(2) to the Federal Rules of Criminal Procedure. They specifically add that Rule 7(c)(2) "is intended to provide procedural implementation of the recently enacted criminal forfeiture provision of the ... Comprehensive Drug Abuse Prevention and Control Act of 1970, Title II, § 408(a)(2) [title 21 U.S.C. § 848(a)(2)." Fed.R.Crim.P. 7, advisory committee's note, 1972 amendment. This addition reestablished common law forfeiture—a previously banned penalty in American jurispru-

dence. *See e.g.,* 18 U.S.C. § 3563, explanatory notes (recognizing that the law on criminal penalties prior to 1984 had "provided that no conviction or judgment shall work corruption of blood or forfeiture of estate."). This subdivision was further amended in 1979 to clarify that it does *not* apply to civil in rem forfeitures under § 881: "subdivision (c)(2) is intended to apply to those forfeitures which are criminal in the sense that they result from a special verdict under rule 31(e) and a judgment under rule 32(b)(2), and not to those resulting from a separate in rem proceeding." Fed.R.Crim.P. 7, advisory committee's note, 1979 amendment.

*States v. Macri*, 185 F.Supp. 144 (D.Conn. 1960); *United States v. Bell*, 120 F.Supp. 670, 671–72 (D.D.C.1954)). These courts have taken Rule 54(b)(5) to apply not only to 19 U.S.C. §§ 1602 *et seq.* as noted in the advisory committee's notes, but also to 21 U.S.C. § 881—the statute under which Matthews' property was forfeited. *See e.g., In re Seizure Warrant*, 830 F.2d at 374 ("Rule 41(e) of the Federal Rules of Criminal Procedure does not authorize the return of property subject to forfeiture under 21 U.S.C. § 881."); *see supra* n. 11.

Courts affirming such a reading of the Federal Rules of Criminal Procedure reason that a petitioner like Matthews is not actually deprived of due process by this denial of access to district courts. They note that petitioners may avail themselves of the administrative procedures established for this very purpose at the time of the proposed forfeiture. *See* 19 U.S.C. §§ 1603, 1607, 1608; 21 C.F.R. § 1316.76(b) (1992). Otherwise, petitioners must suffer the consequences of failing to challenge the seizure and forfeiture at the administrative level.

*See United States v. Price*, 914 F.2d at 1511 (citing *In re Harper*, 835 F.2d 1273, 1274 (8th Cir.1988)).

▮▮▮ The crux of this line of logic lies in the difference between civil and criminal forfeitures. "The legal fiction underlying civil forfeitures characterizes them as proceedings *in rem* against 'offending inanimate objects' as defendants." *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1218 (10th Cir.1986) (quoting *Bramble v. Richardson*, 498 F.2d 968, 971 (10th Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *see* 21 U.S.C. § 881(a) (subjecting certain property to civil forfeiture).[12] Thus, the innocence or guilt of the owner of the "offending" property is not a sufficient defense. *United States v. $39,000 in Canadian Currency*, 801 F.2d at 1218. Civil forfeitures essentially are executed either administratively or judicially.[13]

▮▮▮ In contrast, a criminal forfeiture is brought against an actual person, rather than a thing, and only acts as a sanction against

---

**12.** The inherent in rem character of civil forfeitures, *see The Palmyra*, 25 U.S. (12 Wheat) 1, 14–15, 6 L.Ed. 531 (1827), enables them to evade the strictures imposed by the Fifth Amendment's due process provisions. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682–83, 94 S.Ct. 2080, 2091–92, 40 L.Ed.2d 452 (1974).

> As a consequence, it appears to have been the law from the very earliest times that an inanimate object that is the instrumentality by which the law is violated is forfeited as an act of vengeance against the object. Its owner suffers the loss of the property on a negligence theory or as part of the price an owner must pay for permitting personal or real property to be an occasion for violating the law. Such is now the rule in American jurisprudence.

*United States v. All Right, Title and Interest in Real Property and Appurtenances Thereto Known as 785 St. Nicholas Ave. and 789 St. Nicholas Ave.*, 983 F.2d 396, 402 (2d Cir.1993).

**13.** Summary administrative forfeitures differ slightly from civil forfeitures. They are available *"only"* if the value of the property seized is less than the jurisdictional amount [of $500,000] *and* if no claim to the property is filed within twenty days after the date of first publication of the notice of seizure." *United States v. United States Currency Etc.*, 754 F.2d 208, 212 (7th Cir.1985) (emphasis in original). In sum, administrative forfeitures are only appropriate where the property remains unclaimed: "administrative forfeiture is, in reality, a non-proceeding—it is merely

the consequence of no one having come forward to claim the property seized or contest its forfeitability." *United States v. Baird*, 63 F.3d 1213, 1217 (3d Cir.1995) (emphasis in original).

Administrative forfeitures are instituted by publication of a notice of seizure and the intent to forfeit the property. 19 U.S.C. § 1607. Any claimant has twenty days after the first publication of notice to file a claim and cost bond. 19 U.S.C. § 1608. A timely filing of the claim and cost bond halts this administrative process, *see* 21 C.F.R. § 1316.76(b); 19 C.F.R. § 162.47(e), necessitating the introduction of the United States Attorney who must institute judicial forfeiture proceedings. 21 C.F.R. § 1316.78. In the event the claimant is unable to pay the cost bond, he may utilize the waiver procedure available to bypass the cost bond requirement for indigency in order to successfully halt the administrative process at this early stage. *See* 19 C.F.R. § 162.47(e); *United States v. Idowu*, 74 F.3d 387, 394 (2d Cir.1996). If both a timely claim and a cost bond or waiver are not submitted, the property becomes administratively forfeited at the end of the twenty-day period. 19 U.S.C. § 1609. A claimant may request a "remission" of the forfeiture by submitting a petition to the DEA within thirty days of receipt of notice. 28 C.F.R. § 9.3. If the claimant elects only this latter route of opposition, the DEA presumes a valid forfeiture. 28 C.F.R. § 9.5(a); *see generally, Onwubiko v. United States*, 969 F.2d 1392, 1398 (2d Cir.1992).

the defendant upon his conviction, and may only be executed judicially. *See id.;* 21 U.S.C. § 853(a) (subjecting certain property to criminal forfeiture). The Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 *et seq.,* under which Matthews' property was forfeited, contains one of a rare number of statutory provisions for criminal forfeiture in addition to its civil forfeiture section. Title 21 U.S.C. § 848 was enacted to create a completely separate criminal punishment through forfeiture.

> Unlike the traditional in rem forfeiture proceedings against contraband or articles put to use in criminal activities, see, e.g., 21 U.S.C. § 881 (1976), the criminal forfeiture proceedings of sections 848(a)(2) are in personam. Cf. 18 U.S.C. § 1963 (1976) (the in personam criminal forfeiture provisions of RICO). As such, these provisions operate as an additional penalty against the defendant, requiring the forfeiture of all profits produced by the illegal enterprise along with any interest, property, claim or contractual rights that afford the defendant a source of influence over the enterprise.

*United States v. Long,* 654 F.2d 911, 914 (3d Cir.1981) (some citations and note omitted).

 The essential difference between the two then, is that "a forfeiture under § 881(a) is a civil action concerning a res, not a criminal action involving an individual's liberty." *Dawkins v. United States,* 883 F.Supp. 83, 85 (E.D.Va.1995) (citing *United States v. Turner,* 933 F.2d 240, 245 (4th Cir.1991)). Hence, where property is detained and forfeited "strictly pursuant to civil forfeiture provisions.... Defendant cannot use the criminal procedure device of Rule 41(e) to seek relief from a civil forfeiture proceeding." *United States v. Castro,* 883 F.2d at 1020 (citing *In re Harper,* 835 F.2d at 1274; *In re Seizure Warrant,* 830 F.2d at 373; *United States v. Rapp,* 539 F.2d 1156, 1160 (8th Cir.1976); *Goodman v. Lane,* 48 F.2d 32, 34–35 (8th Cir.1931); *contra United States v. Woodall,* 12 F.3d 791 (8th Cir.1993) (holding that a district court has jurisdiction

to consider a property claimant's assertions that he received inadequate notice of the administrative forfeiture and thus, that his Due Process Rights were violated); *Robinson v. United States,* 734 F.2d 735 (11th Cir.1984)); *see also Linarez v. United States Dep't of Justice,* 2 F.3d at 212 (holding that the jurisdiction of district courts is curtailed once an administrative forfeiture proceeding is begun); *United States v. Price,* 914 F.2d at 1511 ("[O]nce the government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property.").

Assuming that Rule 54(b)(5) does apply in Matthews' case despite the existence of an earlier related criminal case, and that it operates to preclude the availability of Rule 41(e) to him in this action, then the DEA's forfeiture would have divested this Court of jurisdiction over the forfeiture when the DEA mailed to him and published notices of its intent to forfeit his property in May of 1991 and June and July of 1993. (Decl. ¶¶ 7(a)–(b), 8(a)–(b).) These notices explained Matthews' options of either filing a petition for remission or mitigation within thirty days of receipt of notice or filing a claim and cost bond or waiver for indigency [14] to contest the forfeitures in United States District Court. (Decl. ¶¶ 7(c), 8(c).) Matthews had an opportunity to litigate his challenge to the seizure and forfeitures of this property in district court at that time, had he elected to comply with the administrative procedures outlined for him in the notices he was provided. If he had filed the claim of ownership and cost bond or waiver, it would have forced the DEA to institute a judicial forfeiture proceeding. Instead, he allowed the dispositions to finalize without challenging the forfeitures until over two years after their consummation. *See Linarez v. United States Department of Justice,* 2 F.3d at 212; *United States v. Price,* 914 F.2d at 1511; *In re Harper,* 835 F.2d at 1274.

---

**14.** Where a claimant is incapable of paying the cost bond, he may file a waiver due to indigency and bypass the cost bond requirement in order to

halt the administrative process at this early stage. *See* 19 C.F.R. § 162.47(e).

However, one note of clarification is necessary on this line of interpretation of the inapplicability of Rule 41(e) to civil forfeitures, and hence of its suitability with regard to Matthews' case. The case law largely speaks in terms of strictly civil proceedings under Rule 41(e)—those "where no criminal proceedings against the movant are pending or have transpired"—as being precluded by Rule 54(b)(5). *Mora v. United States*, 955 F.2d at 158 (citing *United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir.1987)); *see e.g., Linarez v. United States*, 2 F.3d at 211, n. 1 (holding that the district court lacked jurisdiction to consider a civil complaint seeking return of funds after finalized administrative forfeiture proceedings where the petitioners were never charged with any criminal offense); *United States v. Castro*, 883 F.2d at 1019–20 (holding that where an indicted but untried petitioner's forfeited items were "detained strictly pursuant to civil forfeiture provisions", Rule 41(e) was unavailable, as he ought to have contested the forfeiture via the civil forfeiture procedures); *In re Seizure Warrant*, 830 F.2d at 373–74 (denying petitioner's Rule 41(e) request where he was never charged in a related criminal action, as he could not obtain relief under the Federal Rules of Criminal Procedure in a purely civil forfeiture case); *Grant v. United States*, 282 F.2d 165, 168 (2d Cir.1960) (holding that where Rule 41(e) motions precede criminal proceedings to which the property relates as evidence, it "was in effect a complaint initiating a civil action," and independent from the later criminal proceeding) (quoting *Lapides v. United States*, 215 F.2d 253, 254 (2d Cir. 1954); *Russo v. United States*, 241 F.2d 285, 287 (2d Cir.), *cert. denied*, 355 U.S. 816, 78 S.Ct. 18, 2 L.Ed.2d 33 (1957)); *but see In re Harper*, 835 F.2d at 1274 (holding that a narcotics suspect was entitled to file a Rule 41(e) motion for preindictment return of illegally seized property, but that the court would not invoke its equity jurisdiction to allow such a Rule 41(e) motion brought after the finalization of the uncontested civil forfeiture where he was never indicted); *Glasgow v. United States Drug Enforcement Administration*, 12 F.3d 795 (8th Cir.1993) (finding proper jurisdiction in a district court where the claimant contested the constitutionality of the forfeiture of his property where that claimant was never charged with any crime).

Notably, the cases do not consistently hold that Rule 41(e) motions made where criminal proceedings have *concluded*—the situation in Matthews' case—must be considered purely civil and hence be precluded by Rule 54(b)(5). *Compare Mora v. United States*, 955 F.2d at 158 (remanding case to district court to consider under either Rule 41(e) or an exception under the Federal Tort Claims Act where the district court failed to take evidence under Rule 41(e) and consider petitioner's post-trial motion) *with Onwubiko v. United States*, 969 F.2d 1392, 1397 (2d Cir.1992) (holding that "[w]here criminal proceedings against the movant have already been completed, a district court should treat a Rule 41(e) motion as a civil complaint" in a case where the court still determined to retain equitable jurisdiction in order to afford the post-trial petitioner relief under extreme circumstances); *but see United States v. Price*, 914 F.2d at 1508 (holding that "once the Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property" where the government instituted forfeiture proceedings after the Rule 41(e) motion was filed, but before its consideration by the court, and during the *pendency* of the criminal proceedings against the petitioner).

■ A genuine and strict division between civil and criminal proceedings does not exist in Matthews' case. After his arrest and the consequent seizure of several of the items of property now at issue, Matthews was tried and convicted in criminal proceedings; thus, under the jurisprudence of this line of cases, his recent motion for return of property need not necessarily be categorized as one which cannot stand under Rule 41(e). The criminal proceedings which led to his conviction and consequent, current incarceration came before and were related to the items which were later claimed via forfeiture proceedings by the DEA. Thus, this Court could potentially maintain jurisdiction under Rule 41(e) or under ancillary jurisdiction from the criminal trial. *See Mora v. United States*, 955

F.2d at 158 (citing *United States v. Wilson*, 540 F.2d 1100, 1103 (D.C.Cir.1976); *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977); *United States v. Palmer*, 565 F.2d 1063, 1064 (9th Cir.1977)); *United States v. Woodall*, 12 F.3d at 794; *United States v. Brant*, 684 F.Supp. 421, 424–26 (M.D.N.C. 1988); *see infra* § II(A)(iii).

If this Court follows the basic interpretation of Rule 54(b)(5) as a rigid divestor of jurisdiction, which appears to be the majority view in the case law, this Court must find that Matthews is bound to travel the exclusive avenue devised by Congress to resolve forfeiture disputes through administrative procedures. His failure to challenge the forfeitures in the administrative proceedings would not then confer jurisdiction on the District Court. *United States v. Price*, 914 F.2d at 1511. Thus, this Court would not possess jurisdiction to rule on Matthews' post-conviction Motion for Return of Property pursuant to Rule 41(e) at this juncture, and petitioner would be left without further recourse.

### ii. Equitable Jurisdiction

This seemingly harsh result has led other courts of appeal to recognize that district courts in fact retain equitable jurisdiction over forfeiture proceedings. *See Linarez v. United States Department of Justice*, 2 F.3d at 213 (listing circuit court cases which have acknowledged the availability of equitable jurisdiction in the context of Rule 41(e) motions); *Onwubiko v. United States*, 969 F.2d at 1398 (rejecting the "rigid" view held by some courts that "its judicial review power over such administrative decisions [as DEA forfeitures is] 'jurisdictional,'" and holding instead that the dispute "involv[es] what type of judicial review we have, rather than whether we have it at all").

 Rule 41 has been called by these courts "a crystallization of a principle of equity jurisdiction." *Smith v. Katzenbach*, 351 F.2d 810, 814 (D.C.Cir.1965). "That equity jurisdiction persists as to situations not specifically covered by the Rule." *Id.* In fact, some courts have noted that the "applicability of equitable principles is thus compelled whether one brings an action under Rule

41(e) or premises his claim on the general equity powers of the district court." *In re Harper*, 835 F.2d at 1274 (citations omitted) (referring specifically to pre-indictment motions for return of property where the court must discipline law enforcement officers for conducting illegal searches); *see also United States v. Woodall*, 12 F.3d at 793 (finding that a "collateral due process attack on a DEA forfeiture declaration necessarily presents a claim for equitable relief. . . ."). However, judicial restraint cautions against exercising equitable jurisdiction whenever it exists. *Id.* (citing *Meier v. Keller*, 521 F.2d 548, 554 (9th Cir.1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976) (quoting *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975)).

While arguments have been made in other cases that the mere initiation of administrative forfeiture proceedings should not bar a district court from exercising its equitable jurisdiction over Rule 41(e) petitions, these contentions generally have been dismissed. *See e.g., U.S. v. Price*, 914 F.2d at 1510–11. Thus, in a case such as the one at bar, where the forfeiture proceedings have not only been initiated, but have been fully concluded more than two years hence, (Decl. ¶¶ 7(d), 8(d)), there may be little to recommend the use of equitable jurisdiction to provide relief. *See United States v. Castro*, 883 F.2d at 1020. (citing *United States v. Rapp*, 539 F.2d at 1161) ("Accordingly, exercise of this Court's equitable jurisdiction here would be improper. Defendant has simply chosen the wrong remedy in the wrong court.").

 However, other factors weigh into the formula guiding courts on the exercise of equitable jurisdiction. The purposes which occasion a court's evocation of equitable jurisdiction in forfeiture cases are generally limited to the following: the suppression of evidence prior to an indictment; the deterrence of unlawful conduct in law enforcement officials via the exclusion of illegally obtained evidence, *United States v. Castro*, 883 F.2d at 1020 (citing *United States v. Rapp*, 539 F.2d at 1160); the correction of a procedurally deficient administrative forfeiture, *Onwubiko v. United States*, 969 F.2d at 1398; and

the award of equitable relief for exceptional circumstances. *Mora v. United States,* 955 F.2d at 159 (holding that a district court could exercise equitable jurisdiction to award damages where administrative forfeiture procedures were never initiated, but the property was lost by the government).

 The property to which Matthews lays claim by his motion is not being used as evidence in a criminal proceeding, nor is it alleged that the DEA's forfeiture was procedurally deficient; thus, the ordinary circumstances under which a court would utilize its equitable jurisdiction are lacking. *United States v. Castro,* 883 F.2d at 1020. (citing *United States v. Rapp,* 539 F.2d at 1161). Nonetheless, in order to determine if equitable relief ought to be awarded due to the exceptional nature of the circumstances, the Court must examine whether Matthews has suffered irreparable harm and whether he had an adequate remedy at law in the administrative procedures afforded him. *See Industrias Cardoen, LTDA v. United States,* 983 F.2d 49, 51 (5th Cir.1993); *Schwartz v. United States,* 976 F.2d 213, 217 (4th Cir. 1992), *cert. denied,* 507 U.S. 919, 113 S.Ct. 1280, 122 L.Ed.2d 673 (1993); *United States v. Woodall,* 12 F.3d at 793; *United States v. Kelly,* 872 F.Supp. 556, 560–61 (N.D.Ind. 1994), *aff'd,* 14 F.3d 1169 (7th Cir.1994).

### iii. Analysis

 Although Matthews' petition would be dismissed under the strict reading of Rule 54(b)(5), the use of the Court's equitable jurisdiction to allow this claim may be justified in this case. In any event the Court retains some ancillary jurisdiction over this matter as it relates to Matthews' original criminal trial in this Court.

 The Court is persuaded that adopting the strict interpretation could lead to unjust results. Some courts examining this issue have reached varying and contrary conclusions, but the principle of equitable jurisdiction appears to permeate them all. *See e.g., Linarez v. United States Department of Justice,* 2 F.3d at 213. The Court will therefore allow Rule 41(e) motions to overlap civil forfeitures to permit the Court to determine whether ancillary or equitable jurisdiction should be applied under these circumstances. *See Cheung v. United States,* 1993 WL 642934, at *2. Accordingly, the Court will invoke its ancillary jurisdiction stemming from Matthews' earlier related criminal trial.[15]

 Ancillary jurisdiction in criminal matters generally does not depend upon whether a court has original equity powers. *Morrow v. District of Columbia,* 417 F.2d 728, 739 (D.C.Cir.1969). The more correct question is "what ancillary actions a court appropriately may take in aid of its original jurisdiction." *Id.* Ancillary jurisdiction is not easily defined within a precise framework:

> no court has ever tried to fix its limits with any degree of precision. It springs from the equitable doctrine that a court with jurisdiction of a case may consider therein subject matter over which it would have no independent jurisdiction whenever such matter must be considered in order to do full justice....

*Walmac Co. v. Isaacs,* 220 F.2d 108, 113–14 (1st Cir.1955).[16] The "overriding concern of the courts has been to insure that '*complete justice may be done.*'" *Morrow v. District*

---

15. In response to the government's argument that a claimant "may not obtain relief under Fed.R.Crim.P. 41(e) after the conclusion of his criminal proceeding," the Eighth Circuit noted that "as the district court has jurisdiction over the underlying claim, [claimant's] *pro se* pleading should be liberally construed as seeking to invoke the proper remedy." *United States v. Woodall,* 12 F.3d at 794 n. 1 (citing *United States v. Rapp,* 539 F.2d 1156, 1160 (8th Cir.1976); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *accord United States v. Clagett,* 3 F.3d 1355, 1356 n. 2 (9th Cir.1993)).

16. The D.C. Circuit has attempted to enumerate situations in which it found ancillary jurisdiction should attach; this list includes the following:

> (1) the ancillary matter·arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new fact-finding proceeding; ....

*Morrow v. District of Columbia,* 417 F.2d 728, 740 (D.C.Cir.1969).

*of Columbia,* 417 F.2d at 740 (quoting *State of Iowa v. Union Asphalt & Roadoils, Inc.,* 281 F.Supp. 391, 396 (S.D.Iowa 1968) (emphasis in original)).

▊ In the present case, a *pro se* petitioner has filed a motion for the return of his claimed property; the Court recognizes that it is obliged to construe his pleadings liberally and to search for any "set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Gordon v. Leeke,* 574 F.2d 1147, 1151–52 (4th Cir.1978), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978) (recognizing that even where a *pro se* claim is insufficient in substance, it may be scrutinized and amended to achieve the ends of justice); *see supra* n. 10. Thus, the Court may be urged to apply equitable jurisdiction in this case if some demonstration of facts in his favor appears to justify relief, and it will employ its ancillary jurisdiction to consider the facts regardless of whether it determines to employ its equitable jurisdiction.

However, upon an examination of the facts, the Court determines that it must nevertheless DENY Matthews' motion on the government's three additional grounds.

### B. POSSESSION PROBLEM Re: Car, Coat, & $750.00 in U.S. currency

▊ The United States' prefatory contention with regard to these claims is to deny any knowledge or record of the seizure or forfeiture of some of the items claimed by Matthews, namely a blue 1987 Nissan 240SX and a Shearling coat purportedly in the trunk of the car and containing an additional sum of $750.00 in one of the pockets. (Decl. ¶ 6.) Whether the United States did take possession of these items is a fact crucial to the success of Matthews' assertion.

The Court initially notes that Matthews is only now averring that he has a claim on the items he maintains were in the car at the time of its alleged confiscation. He states that he and his girlfriend—the only possible victim of a proven forfeiture of these arti-

cles—went to the police station the day after the forfeiture in 1991 and inquired after only the car, making no mention of these other items. (Affirm. ¶ 20.) Faced with the apparent lack of government records of any seizure of these items, his own dilatory claim appears suspect.

United States Exhibit A is of particular relevance in this examination as well. This exhibit is a printout of the DEA's Computerized Asset Program ("CAP") Summary for Matthews' case number.

> CAP is an official record of each DEA seizure which contains, *inter alia,* a description of the property, when and where it was seized, the value of the property, the names and addresses of all persons who may have an interest in the property, when and to whom notice of seizure was sent, the date of first publication of advertisement of the seizure, the date a claim of ownership or petition for remission or mitigation was received (if any), and the date and manner of ultimate disposition of the asset.... Each DEA investigation has a 'case number,' and each asset seized in that case is given a 'seizure number.' ... [I]nformation regarding all seizures made in a particular case can be retrieved from the CAP system by inputting the 'case number.'

(Decl. ¶¶ 3–4.)

The CAP summary on Matthews' case number, GW91Z003, reflects seizures on April 5, 1991, April 22, 1991, September 9, 1992, February 18, 1993, and April 24, 1993.[17] Although five automobiles are recorded as having been seized in Matthews' case number CAP summary, none of these were seized on April 5, 1991 and none is a 1987 Nissan 240SX. Similarly, no coat or money in the coat or elsewhere amounting to $750.00 is recorded. (Ex. A.) The facts in this case do not parallel cases in which courts ' have ordered compensation when the government could not locate the claimed property or its records of such seizures. *C.f. United States v. Farese,* 1987 WL 28830 (S.D.N.Y. Dec. 15, 1987). There is no evidence in this case that the government did actually seize these par-

---

**17.** Seizures recorded on April 5, 1991 and April 24, 1993 reflect the two sums of currency

claimed by Matthews in this return of property action.

ticular items and was dilatory in locating them or the records; instead, the only evidence relating to these articles comes from the assertions made by Matthews that they existed and were actually seized.

Without evidence that the United States ever confiscated, held, or instituted federal forfeiture proceedings against these three items, the Court cannot find that they were in fact seized and forfeited. This Court **FINDS** that it cannot order the government to turn over articles it has no record of having taken where the claimant proffers insufficient evidence to the contrary. Other courts have denied motions for the return of property under similar circumstances, for "since the government does not possess [the defendant's] property, it cannot return his property". *United States v. White*, 718 F.2d 260, 261 (8th Cir.1983).

### C. *STANDING PROBLEM Re: Car, Coat, $750.00 in U.S. currency in the Coat, & $4759.00 in U.S. currency*

 The government's alternative argument is equally apt. The government emphasizes that even if it had in fact seized these items, Matthews lacks the necessary standing to contest their seizure. In addition to Matthews' claims to the articles discussed in § II(B) (i.e. the car, the coat, and the $750.00 allegedly in the coat in the car), Matthews' claim to the $4759.00 which was seized from the car and later forfeited also succumbs to the government's standing defense. Although forfeiture laws tend to provide an expansive "zone of interests" to protect innocent property owners, the government contends that Matthews has failed to even establish that low requisite of interest in these articles which is necessary to cross the standing threshold in this case. *See Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1157–58 (2d Cir.1994); 21 U.S.C. § 881(a)(6); Fed.R.Crim.P. 41(e).

 Rule 41(e) of the Federal Rules of Civil Procedure lays out criteria for relief from a deprivation of property in succinct language: the claimant must be the "person aggrieved by an unlawful search and seizure or ... deprivation of property" and that claimant must also be "the person [ ] entitled

to lawful possession of the property." Fed. R.Crim.P. 41(e). Thus, to assert a claim in a forfeiture proceeding, "a party ... must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. Three Hundred Sixty Four Thousand Nine Hundred and Sixty Dollars ($364,960.00) in U.S. Currency*, 661 F.2d 319, 326 (5th Cir. 1981); *United States v. One 1945 Douglas C–54 (DC–4) Aircraft, Serial No. 22186*, 647 F.2d 864, 866 (8th Cir.1981), *cert. denied sub nom., Stumpff v. U.S.*, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982) ("To contest a forfeiture, one must have an ownership interest in the res."). In other words, "[i]t is the owner or owners of the res who have standing to challenge a forfeiture." *United States v. One 1945 Douglas C–54 (DC–4) Aircraft, Serial No. 22186*, 604 F.2d 27, 28 (8th Cir.1979); *United States v. Real Property Located at 5201 Woodlake Drive*, 895 F.Supp. 791, 793–94 (M.D.N.C.1995). That party's ownership interest in the property also must be evidenced in some manner, "including showings of actual possession, control, title and financial stake." *One 1945 Douglas C–54 (DC–4) Aircraft*, 647 F.2d at 866. Thus, Rule 41(e) compels a comparatively low standing threshold; essentially, "an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." *Torres v. $36,256.80 U.S. Currency*, 25 F.3d at 1158 (citing *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir.1992)).

 Standing is the threshold inquiry for entry into federal court "because of the constitutional limitation of federal court jurisdiction to cases and controversies." *United States v. $321,470.00 U.S. Currency*, 874 F.2d 298, 302 (5th Cir.1989); *United States v. $38,570 U.S. Currency*, 950 F.2d at 1111. Thus, in order for Matthews to bring this action, he "first must demonstrate a sufficient interest in the property to give him Article III standing." *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir.1987). Without the requisite standing, "there is no 'case or controversy,' in the constitutional sense, capable of adjudication

in the federal courts." *Id.; see also Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

■ The Court notes by Matthews' own affirmation that the 240SX he desires returned to him actually belonged to his girlfriend, Gail Brewster. (Affirm. at ¶ 1.) Additionally, the other items which he claims were seized with the car on this April 5, 1991 date were all allegedly seized *from* his girlfriend's car. (Affirm. at ¶¶ 2–5.) His relationship with Ms. Brewster does not bring him any closer to legal ownership of these items. *United States v. Hunt,* 505 F.2d 931, 939 (5th Cir.1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975) ("interpersonal relationships cannot make a 'victim' of one who is not otherwise 'one against whom the search or seizure is directed.' ") (quoting *United States v. Altizer,* 477 F.2d 846 (5th Cir.1973)); *U.S. v. Kelly,* 872 F.Supp. at 560.

■ Matthews has failed to submit any evidence that he owned any of the items which were allegedly in Ms. Brewster's car; he rests on his connection with Ms. Brewster and his additional contentions that he placed the coat in the trunk of the car and that he was also in the car. (Affirm. at ¶¶ 8, 20.) Unlike Matthews' general claim on these articles of property, in order to satisfactorily establish standing, a party must do "something more than conclusorily state that he has some undefined 'interest' " in the asset subject to forfeiture. *United States v. $191,910 in U.S. Currency,* 16 F.3d 1051, 1057 (9th Cir.1994). His simple assertions are not enough to yield standing for the return of property. *See United States v. $364,960.00 in U.S. Currency,* 661 F.2d at 326 (noting that "a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture."); *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051 (stating that although a party need not have an "ownership" interest in seized property to have standing to challenge a forfeiture, mere unexplained possession of property subject to forfeiture is insufficient to give a party standing). *See* Fed.R.Crim.P. 41(e).

■ The Court **FINDS** that Matthews has not met even the low standing threshold presented by Rule 41(e). He has failed to allege satisfactory evidence of his personal ownership and any legally cognizable interest in the car, the Shearling coat and the $750.00 in U.S. currency in the coat which were allegedly in the car, or the $4759.00 in U.S. currency seized and forfeited from the car. Rule 41(e) demands evidence of a sufficient interest in any claimed property before the "case or controversy" prong of Article III may be satisfied. Mere proximity and personal relationship to the owner do not satisfy the standing requirement necessary to bring an action regarding this property in federal court.

### D. NO DUE PROCESS VIOLATION Re: $5,073.00 & $4,759.00 in U.S. currency

■ The sum of the government's response to the items it acknowledges having seized follows the approach dictated by similar cases in which the movant is aggrieved by a deprivation of property. *See United States v. Mills,* 991 F.2d 609, 612 (9th Cir.1993); *United States v. Kelly,* 872 F.Supp. at 559–60 (citing Fed.R.Crim.P. 41(e)). As noted earlier, Matthews does claim to have a lawful possessory interest in the sums of money confiscated from his residence in 1993. If a defendant successfully makes out a prima facie case of lawful entitlement, the government has three lines of attack by which it could prevail over the defendant's claim.

The first is that the government may prove under the civil standard of preponderance of the evidence that "whatever interest it asserts overwhelms the defendant's interest." *United States v. Kelly,* 872 F.Supp. at 560. The government in this case has chosen not to utilize this approach, as it is contrary to its other assertions.

The second government tactic is to rebut the defendant's claim of rightful and lawful entitlement to the contested property. *Id.* (citing to *United States v. Mills,* 991 F.2d at 612). The government's twist on this attack

of Matthews' claim lies in its assertion that he lacks standing to lay any claim to this property. *See supra* § II(C).

▮ Utilizing the third strategy, "the government may argue that the defendant is not entitled to relief because he or she has an adequate remedy at law"; that is, that via forfeiture notice and proceedings, the defendant was granted an opportunity to be heard. *United States v. Kelly,* 872 F.Supp. at 560–61. To successfully employ this attack, the government must prove that Matthews had an opportunity to be heard in forfeiture proceedings and that these proceedings were such as could protect his interests. *See id.; Schwartz v. United States,* 976 F.2d at 217.

### i. Evidence Relating to Matthews' Opportunity to be Heard

The DEA admits accepting and administratively forfeiting $4759.00 in U.S. currency on April 5, 1991 (DEA seizure # 96713) as well as $5073.00 in U.S. currency on April 24, 1993 (seizure # 138156). (Ex. B1, B2, C1, C2.) The government's position regarding these items is that Matthews may not collaterally attack forfeitures which were completed with adequate notice and appropriate procedures when he failed to contest the forfeitures using available statutory remedies prior to the completion of the forfeitures. *See Shaw v. United States,* 891 F.2d 602, 603 (6th Cir.1989) ("where there is an adequate remedy at law it must be pursued."); *Schwartz v. United States,* 976 F.2d at 217 (noting that where a defendant is provided with the opportunity of making a "conscious choice ... to forego the very procedures afforded to protect his right to due process", he is denied later civil relief); *Mayfield v. City of Virginia Beach,* 780

F.Supp. 1082, 1085 (E.D.Va.1992) (Smith, J.) (finding that where a party ignores the federal statutory remedies for forfeiture, summary forfeiture is lawful).

### ii. Analysis

▮ The Court examines this case recalling that the claimant has a burden to prove that "he had an *in*adequate legal remedy and that irreparable injury will result if the court does not act." *Linarez v. United States Dep't of Justice,* 2 F.3d at 213 (emphasis added) (citations omitted).

▮ Matthews has not asserted any inadequacy in the statutory remedies made available to him; in fact, he does not address these remedies.[18] According to the exhibits and the affidavit submitted by the government, Matthews was indeed given proper notice in accordance with 19 U.S.C. § 1607. (Ex. B1, B2, C1, C2.) *See supra* nn. 7, 8. He ought to have either petitioned the government for the remission and return of his property in order to keep the matter in the administrative forfeiture domain, or to have filed his claim and cost bond or waiver due to indigency with the DEA within 20 days of that notice to avail himself of his statutory remedies. *See generally Mayfield v. City of Virginia Beach,* 780 F.Supp. at 1084–85; *Schrob v. Catterson,* 948 F.2d 1402, 1413 n. 9 (3d Cir.1991). Pursuant to information provided Matthews in the notices mailed and published, Matthews had every opportunity to follow proper procedures prior to the forfeitures in order to halt the administrative forfeiture process.

▮ Although Snider's declaration and the government's response do not explicitly so state, the implication from both of these documents is that certified, return re-

---

**18.** Matthews only mentions receiving some type of "claim form" which he refused to sign, as it did not reflect the "more than Ten Thousand Dollars [that] had been confiscated." (Affirm. ¶ 19.) The government argues that Matthews "did not like the form or content of the particular notice he received, and therefore chose to ignore it." (U.S. Resp. to Clinton Matthews' Motion for Return of Property at 9.) If that was the case, the government is correct in urging that notice need not correspond to a particular petitioner's own satisfaction with the form of the notice. *See e.g. U.S. v. 51 Pieces of Real Property,*

*Roswell, New Mexico,* 17 F.3d 1306, 1317 (10th Cir.1994) (holding that constitutionally satisfactory notice is sufficient in itself, regardless of any potential for other methods of executing service). However, it is unclear from Matthews' Affirmation whether the "claim forms" he speaks of are indeed the same notice forms the DEA sent to him return receipt requested. In either case, as long as he actually received the notice, the fact that he *chose* not to sign the form does not relieve him of the attendant forfeiture consequences. *See Schwartz v. United States,* 976 F.2d 213, 218–19 (4th Cir.1992).

ceipt requested mail was not only sent to Matthews regarding the impending forfeitures, but was actually *returned.* The government's exhibits document the dates these notices were sent to Matthews and the fact that no petition, claim, cost bond or waiver was ever received on either forfeiture. (Exs. B1, C1.) If the mail had not been returned as received, but rather was returned undelivered and the government had failed to take any steps to locate the claimant, notice would not have been reasonably calculated to notify the defendant. *See Torres v. $36,256.80 United States Currency* 25 F.3d 1154.[19] However, that scenario does not face the Court in the present case. Here, the evidence was seized consistent with constitutional dictates and was forfeited consonant to the applicable laws developed to protect the constitutional rights of property holders. The Court infers that Matthews actually received these notices, as it has received no evidence to contest the government's assertion that the forfeitures occurred only after complete and sufficient notice and process was afforded to him. Matthews had ample opportunity to take advantage of the procedures the DEA provided to him, either administratively or judicially, at the time.[20] Despite his incarceration during the 1993 forfeiture period, he was informed of and could have utilized the waiver procedure to bypass the cost bond requirement for indigency in order to have successfully halted the administrative process at this early stage. *See* 19 C.F.R. § 162.47(e); *United States v.*

*Idowu,* 74 F.3d 387, 394 (2d Cir.1996). Thus, the Court finds no evidence to establish that the notices and opportunities to be heard were not properly afforded to Matthews.

 The evidence establishes that constitutional forfeitures were conducted with attendant due process according to 19 U.S.C. §§ 1607–09, 21 U.S.C. § 881(a)(6) and (d), and 21 C.F.R. § 1316.77(a) (1991), and accordingly, the Court **FINDS** that the forfeitures must stand. *See Mayfield v. City of Virginia Beach,* 780 F.Supp. at 1084–85. For where a claimant such as Matthews "could have sought recovery of his currency in the administrative proceeding by raising the very same claims that he raised in his complaint in district court," that claimant "cannot show that he had an inadequate legal remedy." *Linarez v. United States Dep't of Justice,* 2 F.3d at 213.

### III. CONCLUSION

Even when viewing the evidence in the light most favorable to the petitioner, the Court **FINDS** the following: that the government did not seize the Nissan 240SX, the coat, and the $750.00 allegedly in the coat, and that Matthews has not met even the low standing threshold demanded by Rule 41(e) to assert a legal claim of right to the car, the Shearling coat, the $750.00 in U.S. currency, or the $4759.00 in U.S. currency. The government has sufficiently demonstrated that Matthews' due process rights were not violat-

---

19. Although we do not suggest that the fact the letter was returned to the DEA unclaimed, standing alone, would support a conclusion that notice was insufficient, where the mailed notice of forfeiture is returned undelivered, the intended recipient is known by the notifying agency to be in government custody, and the agency fails to take steps to locate him in order to effectuate delivery of the notice, we hold that such notice does not satisfy the requirements of the statute. *Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1161 (2d Cir.1994).

20. The statute under which Matthews' property was forfeited, 21 U.S.C. § 881(d), adopts the procedures of the United States Customs laws. Title 19 U.S.C. § 1615 of these customs laws specifies that "[i]n all suits or actions ... brought for the forfeiture of any ... [property] seized ... where the property is claimed by any

person, the burden of proof shall lie upon such claimant ... Provided, That [sic] probable cause shall first be shown for the institution of such suit or action...." 19 U.S.C. § 1615 (1988). Thus, where "the Attorney General has probable cause to believe the property is subject to civil forfeiture," the property is to be seized according to applicable customs laws as applied in § 881(d). *United States v. 4492 S. Livonia Road,* 889 F.2d 1258, 1262–67 (2d Cir.1989). The adequacy of this initial step of finding probable cause to associate the seized property by some nexus to drug trafficking, *see United States v. All Right, Title and Interest in Real Property and Appurtenances Thereto Known as 785 St. Nicholas Ave. and 789 St. Nicholas Ave.,* 983 F.2d 396, 403 (2d Cir.1993), though never questioned by Matthews, need not be explored here, as these items were never "claimed by any person" until this action was brought years after the finalization of their forfeitures. *See* 19 U.S.C. § 1615.

ed as to the cash actually seized. He received adequate notice and an opportunity to stake his claim as to the $5073.00 and $4759.00 in U.S. currency which were eventually forfeited. Thus, even accepting ancillary jurisdiction over this *pro se* petitioner's claim, the Court **DENIES** Matthews relief in this action. For the aforementioned reasons, the Court accordingly **DENIES** Matthews' claims.

The clerk is **REQUESTED** to send a copy of this order to the Petitioner and all counsel of record.

IT IS SO **ORDERED**.