**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Roy LAWRENCE, a/k/a Roger Lawrence, Defendant-Appellant.**

**No. 82–3341**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1983.

Certiorari Denied May 16, 1983. See 103 S.Ct. 2103.

Edward Castaing, Jr., New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Marilyn Gainey Barnes, Harry W. McSherry, Jr., Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before REAVLEY, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

On January 22, 1982, a one-count indictment was returned against Roy Lawrence charging him with violation of 18 U.S.C. § 2114.[1] After a two-day trial, a jury

---

1. Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of

found Lawrence guilty of the charge and he was subsequently sentenced to twenty-five years imprisonment. Lawrence has filed a timely appeal.

## I.

The incident for which Lawrence was found guilty occurred on Christmas Eve, 1981, at approximately 8:30 p.m. At that time, Joseph Harris, a truck driver for the United States Postal Service, was driving his five-ton tractor-trailer mail truck from the New Orleans Airport to the main post office. Harris stopped at a red light on Airline Highway, and as the light changed to green, a black male, whom Harris later identified as Lawrence, jumped into the truck with a pistol and said to Harris, "Be cool, man. I want you to drive me to Clearview," and to another street the name of which Harris does not remember. The passenger side of the truck cab was loaded with Harris's "grip," a pail of oranges and a box with two jars of honey. When the assailant attempted to climb completely into the passenger seat, he slipped, and Harris jumped out of the mail truck and ran across Airline Highway to the edge of a shopping center parking lot. From that vantage point Harris observed Lawrence walk to the rear of the truck and speak to someone in a white van that had stopped behind the tractor-trailer. The van pulled away, and Harris continued to watch as Lawrence proceeded across the highway to the shopping center. Noticing that his tractor-trailer had continued to roll along the highway, Harris then ran back across the highway to secure his rig. From the highway, Harris saw Lawrence talking to the occupants of a white car in the shopping center parking lot. After securing his trailer, Harris returned to the parking lot, where he told the driver of the white car, William A. de la Cruz, an off-duty inspector with the Louisiana Department of Public Safety, that the fellow he had just talked to

had tried to rob him. Shortly afterwards, Inspector de la Cruz apprehended Lawrence at the shopping center and placed him under arrest. According to Harris, as Lawrence lay handcuffed on the ground, he told Harris, "You are a dead man."

A subsequent search of the area in the shopping center where Lawrence had been walking uncovered a fully-loaded .357-magnum revolver which proved to be owned by Lawrence. Harris identified the revolver as the weapon Lawrence had wielded when he entered his mail truck.

Lawrence, on the other hand, stated, both following his arrest and at trial, that on the evening in question he had accepted a ride to Baton Rouge with a friend. Because Lawrence was unhappy with the way the friend was driving, he insisted that he be let out of the car. After getting out of the car, Lawrence crossed Airline Highway and tried to catch a ride back to New Orleans. While walking and waiting for a ride, Lawrence saw Harris's truck pull up behind him. Because he saw Harris's hands up in the air, Lawrence thought he was being offered a ride. Lawrence walked back to the truck and pulled on the door, only to find someone already there who kicked at him and told him to "get the hell out [of] the way." The man who kicked at Lawrence was approximately six feet, one inch tall, was wearing a blue jacket, and was carrying a sawed-off shotgun. This man then ran toward the back of the mail truck where Lawrence observed him get into a van occupied by three or four other people. The van then pulled around the truck and headed toward New Orleans. Lawrence crossed the highway into the shopping center parking lot, only to be arrested by Mr. de la Cruz a few minutes later. Lawrence testified that he had placed his gun on the ground prior to the arrival of the police in order to avoid being accidentally shot.

mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than 10 years; and if in effecting or attempting to effect such robbery he wounds the person having custody of

such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years. 18 U.S.C. § 2114.

Seven witnesses testified during the two-day trial, four for the prosecution and three for the defense. Both Harris and Lawrence recounted their versions of the incident, and Inspector de la Cruz substantially corroborated Harris's version. De la Cruz stated that he was stopped at a red light next to the mail truck when he observed the driver jump out of the truck and run across the highway. As the driver alighted from the truck he noticed one pair of legs moving toward the back of the mail truck on the right-hand side. De la Cruz then drove into the shopping center, where he saw Lawrence coming from the direction of the intersection. De la Cruz stopped Lawrence and asked him what had happened. Lawrence answered that he did not know, that he was waiting for a bus when some commotion occurred and he had left. De la Cruz let Lawrence go. Harris then ran over to De la Cruz and told him to stop the man, because he had just tried to rob him. De la Cruz then apprehended Lawrence and asked Harris to identify him. De la Cruz testified that after Harris had made the identification, he asked de la Cruz if he had heard Lawrence tell him that he was a dead man.

In addition to Lawrence, the defense presented one character witness and the personnel director at the Avondale Shipyards where Lawrence worked. The jury returned a verdict of guilty, and Lawrence filed a timely appeal.

## II.

On appeal, Lawrence contends that the district judge's opening remarks to the jury placed the burden on the defense to give an opening statement, thus impermissibly shifting the burden of proof; that the evidence was insufficient to prove that Lawrence intended to "rob, steal, or purloin" any property of the United States; and that a hearsay statement made at trial by witness William de la Cruz was inadmissible.

## A.

Lawrence contends that remarks made by the district judge at the beginning of the trial insinuated that defendant's counsel was obligated to give an opening statement and that this impermissibly shifted the burden of proof to the defendant. The judge's explanatory opening remarks included:

Ladies and gentlemen, a criminal case begins with an opening statement be [sic] counsel representing both sides, the Government and the Defendant.

The Plaintiff, or rather, the Government has the opportunity to address you first. Each side has been allotted fifteen minutes.

These remarks appellant finds offensive even though his counsel was fully prepared to make, and did in fact make, an opening statement. Moreover, Lawrence's counsel made no objection to the judge's statements, nor did he object to making an opening argument.

When counsel fails to make a timely objection to jury instructions at trial, we may not consider such instructions unless they constitute plain error. Fed.R.Crim.P. 30; *United States v. Colmenares-Hernandez,* 659 F.2d 39, 41 (5th Cir.1981), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 116 (1982). Here there is no error, plain or otherwise.

The court did not state that the defense was required to make an opening statement. Moreover defense counsel's opening remarks in which he outlined his theory of the defense and the five points that he would raise during the trial revealed that he was in fact prepared to make an opening statement.

On at least two occasions, the trial judge instructed the jury that the government had the burden of proof and that the defendant was not required to produce any evidence at all:

The indictment or formal charge against a Defendant is not evidence of guilt. Indeed, the Defendant is presumed by the law to be innocent. The law does not require a Defendant to prove his innocence or produce any evidence at all. The Government has the

burden of proving him guilty beyond a reasonable doubt, and if it fails to do so, you must aquit him....

The Jury will always bear in mind, however, that the law never imposes upon a Defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Even had counsel objected to the opening remarks at trial, appellant's first argument is patently frivolous.

### B.

Lawrence's second argument is that the evidence was insufficient to support the jury's guilty verdict. He contends that the government's case rested solely on the testimony of Joseph Harris, the only eyewitness to the incident, who had "scant opportunity, under wretched conditions, to view the man who attempted to rob the mail truck that evening." Lawrence contends that Harris's identification of him came, not from the incident in the mail truck, but from his observation of Lawrence after he was handcuffed and under arrest.

Lawrence further submits that the government never proved that Harris had "any mail matter, money, or other property of the United States" in the mail truck when he was allegedly assaulted by the defendant or that the person who allegedly entered the mail truck either assaulted Harris or had any intent to "rob, steal or purloin such mail matter, money, or other property of the United States" as required by 18 U.S.C. § 2114.

■ In reviewing sufficiency of the evidence, the jury's verdict must be sustained if "there is substantial evidence, taking the view most favorable to the government to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Chaparro-Almeida,* 679 F.2d 423, 427 (5th Cir.1982). The standard for assessing both direct and circumstantial evidence is the same, and the jury's verdict will be upheld unless we can say that the jury must necessarily have entertained a reasonable doubt of the defendant's guilt. *United States v. Davis,* 666

F.2d 195, 201 (5th Cir.1982); *United States v. Witt,* 618 F.2d 283, 284 (5th Cir.1980). Reviewing the evidence in this light, the testimony and the facts adduced at trial clearly gave the jury sufficient evidence upon which to base its conclusion of guilt.

Lawrence was charged with willfully assaulting a United States Postal Service employee with the intent to rob, steal, or purloin mail matter, money, and other property of the United States that was in the lawful charge, control and custody of that employee and in attempting to effect such robbery by putting the life of the postal employee in jeopardy by the use of a dangerous weapon.

■ The statute under which Lawrence was charged, 18 U.S.C. § 2114, delineates both the object of the illegal conduct, and the illegal conduct itself. The victim of this crime must be a person having lawful custody of any mail matter, or other money, or other property of the United States. The proscribed criminal conduct requires proof of both an assault and an attempt to rob, and for imposition of the enhanced sentence, the placing of the victim's life in jeopardy by the use of a dangerous weapon. *United States v. Smith,* 553 F.2d 1239, 1241 (10th Cir.1977); *Aderhold v. Schiltz,* 73 F.2d 381, 381 (5th Cir.1934).

Thus the elements which the government was required to prove are:

1. that Joseph Harris was assaulted;

2. that the assault was committed while Harris was in the lawful charge, control, and custody of United States mail matter, money, or other property;

3. that the assault was accompanied by an attempt to rob, purloin, or steal such mail matter, or other property of the United States;

4. that in attempting to effect the robbery, the perpetrator placed Harris's life in danger by the use of a dangerous weapon;

5. that Lawrence was the person who committed the proscribed conduct.

Assault as proscribed by the statute includes either an attempted battery or the placing of another in reasonable apprehension of bodily harm. *Ladner v. United States,* 358 U.S. 169, 177, 79 S.Ct. 209, 213, 3 L.Ed.2d 199, 205 (1958); *United States v. Bell,* 505 F.2d 539, 540 (7th Cir.1974); *United States v. Rizzo,* 409 F.2d 400, 403 (7th Cir.1969). The jury was entitled to find that Harris was placed in reasonable apprehension of bodily harm when he found himself looking down the barrel of a .357-magnum. The first element was thus in evidence.

At the time of the attempted robbery, Joseph Harris was a on-duty United States Postal truck driver who had in his truck five hampers containing, in part, priority mail. Lawrence contends that the government failed to prove that the tractor-trailer actually contained mail. On both direct and cross examination, however, Harris testified that he had hampers of priority mail in the truck trailer. Thus the second element was clearly in evidence.

As for the third element, intent to rob, Lawrence contends that telling someone to "be cool" and to drive to a certain intersection does not evidence an intent to rob. From these demands Lawrence asserts that a jury could just as reasonably conclude that "the intruder intended only to demand a ride as far as Clearview, at which time he would leave the van," as it could conclude that the intruder intended to rob the driver. Lawrence contends therefore that since his interpretation is reasonable and uncontradicted and since this view is consistent with his innocence, there must be a reversal.

Lawrence apparently relies on earlier Fifth Circuit cases which required that the reviewing court determine "whether reasonable minds could have found the evidence inconsistent with every reasonable hypothesis of the defendant's innocence." *United States v. Colmenares-Hernandez,* 659 F.2d 39, 41 (5th Cir.1981); *United States v. Ocanas,* 628 F.2d 353, 360 (5th Cir.1980). We would note, however, that the en banc decision in *United States v.* *Bell,* 678 F.2d 547 (5th Cir.1982) (en banc), specifically rejected that standard. There we stated:

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to chose among reasonable constructions of the evidence.

*United States v. Bell,* 678 F.2d at 549. Moreover, under either standard or formulation, the evidence here is clearly sufficient.

The jury was entitled to find that the intruder, by pressing a .357-magnum into Harris's face, was more than a simple hitch-hiker. Although the intruder failed to say "I intend to rob, steal, or purloin" the mail, money or other United States property, the jury could certainly infer such intent from the circumstances. Since we must make all reasonable inferences and credibility choices in favor of the jury verdict, *United States v. Davis,* 666 F.2d 195, 201 (5th Cir.1982), sufficient evidence of the third element supports the jury's verdict.

In determining whether Harris's life was placed in danger with the use of a dangerous weapon, the question is not whether the victim was subjectively frightened nor whether the perpetrator intended to use the weapon. The critical question is whether a life was actually placed in danger. *United States v. Davis,* 560 F.2d 144, 147 (3d ,Cir.1977); *United States v. Marchbanks,* 469 F.2d 72, 74 (5th Cir.1972). As we have previously held, use of a gun is *per se* sufficient cause to impose the enhanced sentence under 18 U.S.C. § 2114. *United States v. Parker,* 542 F.2d 932, 934 (5th Cir.1976). Thus the fourth element was sufficiently in evidence.

As the final element, the government was required to prove that Roy (Roger) Lawrence was in fact the person who assaulted Harris with an intent to rob or steal the United States property here in-

volved. Lawrence contends that the circumstances of the assault were such that Harris could not have positively identified the perpetrator from the few seconds that the perpetrator was in the cab of the tractor-trailer. Rather he alleges that Harris identified him as the offender only after he had been placed under arrest and was lying on the ground.

Both Harris and de la Cruz testified that there was sufficient light from other automobile headlights and from the lights in the shopping center to see what occurred on the evening in question. Harris positively identified Lawrence as the person who held a gun only inches from his face on the evening of December 24, 1981. He gave a physical description of the defendant as well as a description of the defendant's clothing. He testified that he kept the defendant's whereabouts in view as Lawrence crossed into the parking lot, stopped, and talked to Inspector de la Cruz. After securing his rig, Harris hastened to tell de la Cruz that the person to whom he had just spoken was the person who had tried to rob him. After de la Cruz arrested Lawrence, Harris again positively identified him as the person who had tried to rob him. Later Harris identified Lawrence's gun that was found in the parking lot as the gun which had been shoved unceremoniously into his face. The jury was entitled to weigh the credibility of the witnesses and to determine whether Harris's positive identification of Lawrence was deserving of more weight than Lawrence's denial of guilt. Moreover, the identity of a criminal defendant may be proven by inference and circumstantial evidence. *United States v. Quimby,* 636 F.2d 86, 90 (5th Cir.1981). Thus Harris's identification of Lawrence's gun as the one used in the assault and his description of the defendant's clothing on that evening were also for the jury to weigh. The final element was therefore sufficiently in evidence.

Viewing the evidence in the light most favorable to the government, as we must, we find that there is sufficient evidence to support the jury's verdict.

C.

Lawrence finally argues that the admission of part of Inspector de la Cruz's testimony was reversible error. At trial Harris testified that after de la Cruz apprehended Lawrence, de la Cruz asked Harris to identify the appellant. Harris made the identification and then asked de la Cruz if he had heard Lawrence say that he, Harris, was a dead man. Later during the trial, while testifying about the events of that evening, Inspector de la Cruz recounted that after he arrested Lawrence, Harris came over and said, "Yes, he's the guy." Harris then said, "Did you hear what he said?" Over Lawrence's objection, de la Cruz stated that Harris "told me that the suspect just told him that he was a dead man."

The testimony was admitted as an excited utterance pursuant to Rule 803(2). This rule allows admission of hearsay, otherwise competent, that is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2).

The defense argues that Harris's statement to de la Cruz was made after Lawrence had been arrested, handcuffed, and was lying on the ground, a time when Harris was safe. Even though the attempted robbery in the truck constituted a startling event, Lawrence contends that the effects of that event had sufficiently cooled at the time of the statement in question.

The government, on the other hand, contends that Harris had just witnessed the apprehension of the man who moments before had attempted to rob him. As Harris approached Lawrence, Lawrence lifted his head and stated, "You're a dead man." Harris immediately turned to the inspector and said, "Did you hear that? He just said, I'm a dead man."

In determining the admissibility of this testimony, we note that the ultimate decision on admissibility rests with the trial judge. We are not to substitute our judgment for that of the trial judge, and his

decision will be upset only if we find that the admission of the testimony constituted an abuse of discretion. *United States v. Ruppel,* 666 F.2d 261, 269 (5th Cir.1982); *Scheib v. Williams-McWilliams Co.,* 628 F.2d 509, 511 (5th Cir.1980).

We do not find that the court abused its discretion. It was not abuse to view the statement as spontaneous, excited, or impulsive as required by Rule 803(2) rather than the product of reflection and deliberation. *United States v. Iron Shell,* 633 F.2d 77, 86 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Here each of the parties to the conversation testified. Harris testified first, followed later in the trial by de la Cruz and then Lawrence. This is important in view of the principle that the prejudice from improperly admitted hearsay testimony is reduced when the out-of-court declarant is called as a witness. *United States v. Bernes,* 602 F.2d 716, 720 (5th Cir.1979); *United States v. Rodriguez,* 509 F.2d 1342, 1348 n. 4 (5th Cir.1975). Thus even if de la Cruz's statement were inadmissible hearsay under Rule 803(2), any prejudical effect of the testimony was lessened by the submission of the witnesses to in-court cross-examination. Moreover, there was sufficient probative evidence to sustain a finding of guilt without considering the challenged testimony. The admission of the testimony was not error and certainly not reversible error.

For the reasons set forth in the above paragraphs, we thus affirm the jury's verdict.

AFFIRMED.