Carl Antonio ALMON, Petitioner,

v.

UNITED STATES of America, Respondent.

No. CIV.A. 9:02–0217–08.
No. CRIM. 9:98–CR–1194.

United States District Court,
D. South Carolina,
Beaufort Division.

Feb. 9, 2004.

Carl Antonio Almon, Marianna, FL, pro se.

Nancy C Wicker, U.S. Attorneys Office, Columbia, SC, for respondent.

### ORDER

BLATT, Senior District Judge.

### INTRODUCTION

This matter is before the Court on the *pro se* Petitioner's request for writ of habeas corpus, pursuant to 28 U.S.C. § 2255. The Petitioner was convicted by a jury in June 1999 of a single count of assaulting a postmaster with intent to rob and steal property of the United States, and in doing so jeopardizing the life of the postmaster with a knife, in violation of 18 U.S.C. § 2114. The Petitioner was sentenced to 100 months' imprisonment, followed by a three-year period of supervised release, as well as with restitution in the amount of $603.00.

The Petitioner obtained a second attorney after sentencing and appealed his conviction and sentence, raising four issues: sufficiency of the evidence against him, a constructive amendment to the indictment, improper Government statements during closing arguments, and ineffective assistance of counsel. The Fourth Circuit Court of Appeals rejected the first three contentions, declined to take up the ineffective assistance of counsel argument, and affirmed the Petitioner's conviction on November 13, 2000. The Petitioner's request for certiorari review by the United States Supreme Court was denied on March 19, 2001.

The Petitioner then filed this action on January 23, 2002. The petition alleges five clear assignments of error and other less-specific arguments. The Government moved for summary judgment on March 14, 2002. After being given notice of the procedure for summary judgment and being advised of his duty to respond to the motion, *see Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), the Petitioner moved for and was granted an extension of time in which to respond. The response, which also requests summary judgment be granted in his favor, has been filed and this matter is now ripe for decision.[1]

### DISCUSSION

*Habeas Corpus Petition*

■ In general, 28 U.S.C. § 2255 requires a defendant to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." This is the proof needed to allege a constitutional error. "The scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary

---

1. As part of the present habeas corpus action, the Petitioner also filed a motion for return of property allegedly seized in the search of his home during the investigation of the underlying charges. Though the Petitioner should more properly file a separate civil action for return of property rather than include it as part of his habeas corpus petition, *see United States v. Jones,* 215 F.3d 467, 470 (4th Cir. 2000), the Court decided to permit the parties to brief the return of property issue prior to finally deciding the habeas corpus action, and to resolve them in a single order. Due to difficulties by the Government in obtaining statements from the law enforcement officials involved in the search, there was significant delay in this process. The Government has now filed its supplemental response, and both issues are now ripe for decision.

demands of fair procedure.'" *United States v. Mikalajunas,* 186 F.3d 490, 495–96 (4th Cir.1999).

▮ Most of the claims alleged by the Petitioner, however, could have been raised on appeal, but were not, subjecting them to a different standard of review:

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.

*United States v. Mikalajunas,* 186 F.3d at 492–93 (citations omitted).

The Petitioner raises several arguments, which may be divided into certain general topics for purposes of discussion. Each will be addressed in turn.

### - Unreasonable Search and Seizure

▮ The Petitioner alleges generally that he was denied constitutional rights in the form of "unreasonable searches and seizures without probable cause." However, the Petitioner fails to provide any specific evidence or other proof relating to this ground in his petition or in his response to the Government's motion. In addition, the validity of the search of the Petitioner's home was raised and thoroughly discussed prior to trial via a lengthy motion to suppress hearing, and the Petitioner failed to raise the issue before the Court of Appeals. After a review of the entire record, the Court concludes that, with respect to this claim, the Petitioner has totally failed to demonstrate the cause, prejudice, or inherent fundamental miscarriage of justice required to vacate his conviction. *See Mikalajunas,* 186 F.3d at 492–93.

### - Double Jeopardy, Self–Incrimination and Deprivation of Life/Liberty

▮ Likewise, the Petitioner generally claims in his petition that his conviction was obtained "in violation of the protection against double jeopardy." He provides no evidence to support this claim, including what other charge or prosecution would serve to invoke double jeopardy on the present conviction.[2] In addition, the Petitioner failed to raise this issue on appeal. As he has failed to demonstrate the proper cause, prejudice or miscarriage of justice, this claim is dismissed.

The Petitioner also claims summarily that he was unconstitutionally "forced to be a witness against himself and deprived of his life and liberty." The Petitioner chose not to testify at his trial, and he does not submit any evidence to support his claim that his right against self-incrimination was infringed.[3] Likewise, aside from his general challenge to the propriety of his conviction and sentence, the Petitioner alleges no specific incident of deprivation of life or liberty. Additionally, neither of these grounds was raised on appeal. To

---

**2.** Indeed, the Petitioner was charged with only one count in this particular indictment.

**3.** The Petitioner's seemingly contradictory claim that his "counsel denied [him] the guar-anteed right to testify on his own behalf after [he] requested to take the stand to be questioned about the incident" will be addressed in the discussion of ineffective assistance of counsel.

the extent not otherwise addressed by this Order, these claims are likewise dismissed.

- *Speedy Trial Act*

The Petitioner argues for the first time in this petition that he was denied a speedy trial, as defined by 18 U.S.C. § 1361. He asserts that he "did not motion [sic] nor did he file any motion for continuance or any motion that would have toll [sic] the trial. Even if defendant would have filed several motions, this could not have stopped the speedy trial clock." He did not raise this issue on appeal, and thus the "cause and prejudice" standard is applicable.

■ Even under any standard, however, the Petitioner was not deprived of a speedy trial. The Speedy Trial Act requires trial to begin within 70 days from the latter of the date of indictment or the date of first appearance. 18 U.S.C. § 3161(c)(1). The date of indictment or appearance does not count. *See United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir.1996). Here, the Petitioner was indicted on November 20, 1998, and was arraigned on December 4, 1998. Thus, the 70–day period began on December 5, 1998.

■ The Speedy Trial Act excludes from calculation "any period of delay resulting from ... any pre-trial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). The Petitioner filed a motion to suppress on January 8, 1999, which was not resolved until March 29, 1999. The United States Supreme Court has held that this period of exclusion is total, without regard to any discussion as to whether this period is "reasonable." *See Henderson v. United States*, 476 U.S. 321, 326–27, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). Thus, this entire period of 80 days is excluded.

■ The Act also excludes from its calculation any delay resulting "from any interlocutory appeal." 18 U.S.C. § 3161(h)(1)(E). The Petitioner filed an interlocutory appeal of the denial of his motion to suppress on April 7, 1999. The Fourth Circuit dismissed this appeal for failure to prosecute on May 27, 1999, a period of 50 days.

The Petitioner's trial began on June 21, 1999. The number of days which passed for Speedy Trial Act purposes is therefore calculated as follows:

| | |
|---|---|
| December 5, 1998 through January 7, 1999 = | 34 days |
| March 30, 1999 through April 6, 1999 = | 8 days |
| May 28, 1999 through June 20, 1999 = | 24 days |
| TOTAL = | 66 days |

This period is within the 70 days permitted by the Act.

■ Moreover, the Petitioner did not object (and the Court finds it would not have been reasonable to object) to the continuance of the trial from the March 1999 term of court to the May 1999 term, so that the motion to suppress could be properly analyzed and discovery could be appropriately conducted. Thus, the Petitioner has not demonstrated a violation of the Speedy Trial Act, and this claim is dismissed.[4]

4. The Petitioner seems to argue that subsection (h)(1)(J) of the Speedy Trial Act limits the amount of excludable time for pending motions to 30 days. Subsection (h)(1)(J) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." In the present case, however, the motion to suppress was not "under advisement" until the Court heard all the arguments and received all the evidence, i.e., the date of the hearing on the motion. As the Court denied the motion on the date it was heard, subsection (h)(1)(J) has no applicability here. The Supreme Court in *Henderson* rejected a similar claim. 476 U.S. at 326–27 (defining "under advisement" as "the time the court receives all the papers it reasonably expects").

*- Defective Indictment*

In his response to the Government's motion, the Petitioner claims for the first time that the indictment against him was defective. The Petitioner argues that "the indictment charged with [sic] robbery and was never amended or superseded to charge assault or attacking as convicted. There were [sic] no lesser crime or charge presented to the jury. The charge of attacking does not fit under the robbery statute." He further urges that "the indictment failed to state which assault is charged or convicted defendant of[,] leaving the jury to second-guess what assault, what attack took place." After arguing the sufficiency of the evidence against him (which will be discussed below), the Petitioner concludes by claiming that "the indictment failed to name a crime or the objects, mail matters, money or any thing of value that belonging [sic] to the United States or was under care, custody and control of the so-called victim.... There are 100,000 postmasters throughout the United States and an indictment seem [sic] to have name [sic] them all without stating what took place or what crime happen [sic] when, where, how and to whom."

It appears that the Petitioner alleges two deficiencies in his indictment: (1) the statute in question requires proof of robbery rather than the separate crime of attacking or assault, and (2) the specific victim and property in question in this case were not named in the indictment. Each will be addressed in turn.

■■■ With regard to the robbery versus assault claim, the Petitioner did raise a similar issue on appeal—in the form of a constructive amendment to the indictment. This claim was rejected by the Fourth Circuit, which cited *United States v. Lawrence*, 699 F.2d 697 (5th Cir.1983). A reading of the statute and the *Lawrence* decision make clear that the indictment in this case properly stated the elements of

the crime, and did not require more or less proof than what is usually required.

The statute at issue, 18 U.S.C. § 2114(a), provides as follows:

(a) **Assault.**—A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

The Fourth Circuit, by citation to the *Lawrence* decision, affirmed that the elements of this crime are as follows:

1. that [the victim] was assaulted;

2. that the assault was committed while [the victim] was in the lawful charge, control, and custody of United States mail matter, money, or other property;

3. that the assault was accompanied by an attempt to rob, purloin, or steal such mail matter, or other property of the United States;

4. that in attempting to effect the robbery, the perpetrator placed [the victim's] life in danger by the use of a dangerous weapon;

5. that [the defendant/petitioner] was the person who committed the proscribed conduct.

*See Lawrence,* 699 F.2d at 701. The indictment in this case reads as follows:

> On or about September 4, 1998, in the District of South Carolina, the defendant, **CARL ANTONIO ALMON**, did assault a postmaster, a person having lawful charge, custody and control of United States mail matter, money and other property of the United States, with intent to rob, steal and purloin said mail matter, money and other property of the United States, and in doing so, the defendant, **CARL ANTONIO ALMON**, put the life of the said postmaster in jeopardy by the use of a dangerous weapon, that is, a knife.

The indictment in this case clearly states every element of the offense. The Petitioner's arguments that the indictment failed to charge assault and that the statute criminalized only robbery and not assault are frivolous; indeed, the statute itself is entitled "Assault," and the first phrase of the indictment charges that the Petitioner "did assault" a postmaster. This claim is rejected.

██ The claim of specificity in the indictment fails for the same reason. As noted by the discussion and elements outlined in the *Lawrence* decision, an indictment under this statute is not required to indicate the specific victim, by name and title, so long as the alleged victim of the crime was a person "having lawful charge, control, or custody of any mail matter or of any money or other property of the United States." *Lawrence,* 699 F.2d at 701. *Cf. Banks v. United States,* 239 F.2d 409 (7th Cir.1957) (noting that an "essential element" of the charge is the victim's "lawful charge" of money or property, and the title of the named victim, "clerk in charge," was sufficient to satisfy this element). Nor is the indictment required to specify what type of "mail, money, or other property of the United States" was taken. *Lawrence,* 699 F.2d at 701; *see Johnston v. United*

*States,* 145 F.2d 137 (9th Cir.1944) (same); *Blackwood v. United States,* 138 F.2d 461 (8th Cir.1943) (same).

Here, the specified person in the indictment was a "postmaster," and there was proof at trial that the victim of the assault was indeed a postmaster with lawful charge of the United States mail and other property. The indictment also alleged that "mail, money, or other property of the United States" was intended to be stolen in the assault. This is sufficient to satisfy the specificity requirement. *See generally United States v. Vinyard,* 266 F.3d 320, 325 (4th Cir.2001) ("A valid indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense.") (quotation and citation omitted). The Petitioner's claim in this regard is denied.

██ The Petitioner also raises for the first time a claim under *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which provides that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." It is unclear precisely how the *Apprendi* doctrine is applicable in this case. The Petitioner was sentenced to 100 months' imprisonment, which is well within the 300–month (25–year) maximum statutory penalty for threatening the life of the victim with a dangerous weapon, and even falls within the 120–month (10–year) statutory maximum penalty for a non-life-threatening assault. In fact, the Petitioner's recitation of *Apprendi* is suspect because he mentions the fact that the case requires a jury to prove beyond a reasonable doubt "the drug quantities that trigger enhanced statutory maximum sentences under the

federal controlled substances stature [sic]," which obviously has no applicability to this indictment. The Petitioner's claim in this regard is rejected as frivolous and clearly without merit.

- *Sufficiency of the Evidence*

The Petitioner goes to great lengths in his petition and response brief to challenge the sufficiency of the evidence against him. He claims repeatedly that the fact that he, an African–American, is "black as night" whereas the victim testified that the culprit was a "light-skinned black man," is sufficient in itself to vacate his conviction. He also asserts that the color of the garbage bag worn over the culprit's face was never determined, as it was referred to as both black and green, thereby indicating an unresolvable conflict of evidence. The Petitioner questions various other contradictions in the testimony, such as into which pocket the culprit placed the stolen stamps and the timing of incident relative to the distance from his home.

 Challenges to the sufficiency of the evidence are non-constitutional errors; as such the Court, in order to provide relief, must find a "fundamental defect which inherently results in a complete miscarriage of justice," or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Mikalajunas,* 186 F.3d at 495–96. Here, the Court must view the evidence in the light most favorable to the Government. *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").

 Under the evidence presented there is sufficient evidence from which reasonable jurors could conclude that the Petitioner was the culprit. *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781. There was undisputed physical evidence, in the form of stamps and restricted postal envelopes found in the Petitioner's home and car, as well as a metal box and stamp-liners found in a burn barrel in the Petitioner's yard, which directly connect the Petitioner with the robbery. In addition, there was testimony of a postal employee at another location who recognized the Petitioner when he redeemed the specific type of stamp taken from the robbed post office. There was also testimony that the travel time and distance from the Petitioner's place of work to the robbed post office made the timing of the robbery consistent with the end of the Petitioner's work day. As such, the Court must reject the Petitioner's contention in this regard.[5]

- *Government's Withholding of Evidence*

The Petitioner argues vaguely that both the prosecution and defense counsel failed to "disclose to the defendant vital information and evidence." To the extent that he claims the prosecution withheld evidence, the Petitioner does not provide any further specific evidence or information as to what was withheld and when it was known. In addition, the Petitioner failed to raise this

---

5. The Petitioner speculatively alleges that there was insufficient time, based on the times established by the evidence, for him to leave the robbed post office (the 911–emergency call was placed at 3:45 pm) and get to his house by 4:15 pm, the time his parole officer is alleged to have met him. However, the Petitioner utterly fails to provide specific documentary proof of his claim, and thus fails to meet his burden. *See Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3d Cir.1991) ("bald assertions and conclusory allegations do not provide sufficient ground ... to require an evidentiary hearing"; contrary rule would "encourage meritless petitions burdening judicial resources").

matter on appeal. Without more, the Court must reject the Petitioner's contention. The issue of whether the Petitioner's own counsel withheld information from him or from the jury will be addressed in the discussion of ineffective assistance of counsel.

- *Ineffective Assistance of Counsel*

By far the largest claim raised by the Petitioner is that his trial counsel was ineffective, at nearly every stage of the proceedings. Claims of ineffective assistance of counsel must meet two criteria:

> First of all, the petitioner must demonstrate "that counsel's performance was deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Second, he must show "that the deficient performance prejudiced the defense," i.e., that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Carter v. Lee*, 283 F.3d 240, 248 (4th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (citations omitted). This means that the Petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that the deficiencies in his performance prejudiced his defense. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052.

With regard to this second element, a petitioner alleging ineffective assistance must affirmatively prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir.1994). Further, when it is a conviction the petitioner is challenging, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.*

In considering a Sixth Amendment ineffectiveness claim, a reviewing court does not "grade" the lawyer's trial performance; it examines only whether his conduct was reasonable "under prevailing professional norms," and in light of the circumstances. Because it may be tempting to find an unsuccessful trial strategy to be unreasonable, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Carter v. Lee*, 283 F.3d at 248–49 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). The Petitioner claims that his counsel was ineffective for a number of reasons. Each will be discussed in turn.

- *Threats, Intimidation to Plead Guilty*

■ The Petitioner first claims that his counsel threatened him and intimidated him to plead guilty: "Acting in a terrorist manner, counsel not only violated the law, but deprived defendant of a fair trial and committed fraud upon the Court. Trial counsel made *threats* and *verbal abuse* [sic] towards the defendant during trial which was the only time Petitioner had any real opportunity to see counsel. Counsel spent each and every opportunity he had to attempt to force Petitioner to plead guilty to [10] years."

The Government has submitted an affidavit from the Petitioner's counsel indicating that he "has never forced Mr. Almon to plead or to take a trial, but insisted that it was his decision to choose. He [Petitioner] chose trial." The affidavit also de-

nies making any threats or imposing abuse on the Petitioner, and asserts that he "prepared for a trial and examined every piece of evidence or testimony that he [Petitioner] presented, or that the Government had against or for him."

Even accepting the Petitioner's allegations as true, the fact that the Petitioner's counsel encouraged his client to plead guilty, based upon the evidence gathered and presented, is not in itself ineffective assistance, but a trial strategy decision which is entitled to deference. The Petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Here, the Petitioner ignored his counsel's advice to plead guilty, and instead proceeded to trial. He cannot demonstrate that advice he ignored was in itself ineffective or prejudiced him in any way. This claim is rejected.

*- Failure to Request Downward Departure*

 The Petitioner alleges that "counsel failed to address issues at sentencing and trial that may have resulted in the imposition or a substantially greater sentence that [sic] should have been imposed." He claims that "counsel was Ineffective at sentencing for failing to Move for a downward departure on the grounds that the acts for which Petitioner was convicted was brought under an incorrect Federal Statute or on a defective indictment." The Court is unaware of a sentencing statute or guideline which would permit a *reduced* sentence based on an improper conviction; the true remedy for such errors is completely vacating the sentence, not merely reducing it.

 Even assuming that the Petitioner's claim is that his counsel improperly failed to move for mistrial or judgment of acquittal based on a defective indictment or improper statute, the claim must fail. The Court has already addressed the merits of these claims in this Order, and has rejected them. There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994); *United States v. Mikalajunas,* 186 F.3d at 493.

*- Failure to Call Petitioner, Other Witnesses*

 The Petitioner also alleges that his counsel was ineffective for refusing to call him, his wife, or his parole officer as material witnesses in his defense. "Counsel denied defendant the guaranteed right to testify on his own behalf after defendant requested to take the stand to be questioned about the incident and issues he could have explained to the jury. [H]ad counsel allowed defendant's wife to testify . . . the verdict would have been different."

The decision of whether to call a witness for trial, or whether to put the defendant on the stand at trial, is one of trial strategy which is presumed to have been "sound." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The Petitioner must overcome this presumption. *Id.* With regard to the Petitioner's own testimony, it seems that part of counsel's decision not to call the Petitioner was based on his past criminal history. The Petitioner claims that he "was not convicted of the many or as the government used it (several) [sic] robberies. It is believed that there were [sic] no parole hold or any violation of parole filed against defendant for any such *knives* caper as the government would want this court to believe."

The record, specifically the Petitioner's presentence investigation report, reveals that the Petitioner had, at the very least, pleaded guilty to two separate counts of unauthorized use of a vehicle without the owner's permission, and been convicted on

three counts of aggravated robbery and three counts of robbery. No doubt counsel knew of these convictions and was concerned about the effect knowledge thereof would have on the jury.

Placing the Petitioner on the stand to testify would have opened the door of opportunity for the Government to question him about his past convictions. Such testimony would not usually be admissible unless the Petitioner took the stand. In addition, testimony from the Petitioner's parole officer regarding his meeting with the Petitioner on the day of the robbery would also present the jury with the fact that the Petitioner was a convicted felon. Counsel obviously weighed the benefit of this testimony against the potential prejudice it could create and chose not to present this testimony.

 It is a legitimate trial strategy to refuse to put a defendant or other witness on the stand to protect introduction of past criminal history, even over the objection of the defendant. *See Carter v. Lee,* 283 F.3d 240, 249 (4th Cir.2002) ("the advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance'") (quoting *Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir.1983)); *see also Jones v. Murray,* 947 F.2d 1106, 1116 n. 6 (4th Cir.1991) (reiterating principle that advice to testify is paradigmatic of strategic decision); *Rogers–Bey v. Lane,* 896 F.2d 279, 283 (7th Cir.1990) (concluding that counsel's advice not to testify, based in part on erroneous belief that defendant could be impeached by prior conviction, was not deficient performance). As the Petitioner has not overcome his burden of demonstrating that this trial strategy was not sound, it was not error to

refuse to put the Petitioner or his parole officer on the stand.

As for the failure to call the Petitioner's wife to testify, the Petitioner only claims, without presenting substantive evidence, that it was counsel who refused to call her to the stand, and that the outcome of his trial would have been different had she testified. The affidavit of Petitioner's counsel submitted by the Government avers that the Petitioner's wife "refused to testify," and that the Petitioner himself "elected to refuse to call her as his witness, because she had been found with stamps under her dress [during the police search of their home]." The affidavit also states that counsel "suspected that his wife may have coached" a witness into giving a statement.[6]

The trial transcript supports counsel's version of events. On the first day of trial, in clarifying the parties' witness lists, counsel for the Petitioner stated that "I would like to just take one moment to make sure that the defendant is not going to call his wife. If he's not, we can strike her from the list and allow her—if the Court would allow for her to remain in the courtroom." After conferring with the Petitioner, counsel announced for the record that "I have spoken to my client about it. It is his behest to me that we're not going to call his wife as a witness in this particular case." The Petitioner did not object at that time, or at any other time during the trial or appeal, to his counsel's characterization of who made the ultimate decision.

The Petitioner presents no evidence in his petition demonstrating that this is not the case, or that a decision not to call her would have affected the outcome of the trial. Moreover, even had counsel chosen not to call her, this decision is a trial strategy entitled to deference. The decision not to call her is justified by the fact

6. The substance of this statement and its import on this trial will be discussed *infra.*

that cross-examination on her role in attempting to hide evidence seized during the home search and possibly her role in coaching a potential witness would harm the Petitioner's case more than it would help. *See Carter v. Lee,* 283 F.3d at 248–49. This claim is also rejected.

*- Failure to Properly Investigate; Failure to Raise Alibi; Withholding Evidence*

■ The Petitioner's final claims focus on counsel's alleged failure and refusal to submit into evidence the affidavit of a woman who allegedly saw the Petitioner on the day of the robbery, near the time of the robbery, at a place distant from the robbery. Counsel's alleged refusal to submit this evidence was, the Petitioner claims, the result of an intentional attempt to extort an additional $7,500 from the Petitioner and his family, or was in any event the result of poor representation.

The witness, Ms. Ruth Thome, was at the time of trial an 86–year–old friend of the Petitioner's wife. Ms. Thome submitted an affidavit to the Petitioner, dated October 8, 1998, in which she stated as follows:

> On Friday, September 4, 1998, I asked [the Petitioner's wife] to escort me food shopping as she often does. We were at a stop light in front of Hardees [sic] restaurant when Mr. Carl Almon had passed us going towards his home. It was between 3:35 and 4:45 that afternoon when he rode by us and honked his horn and waved. About 45 minutes later, Mr. Carl Almon came up to Winn Dixie. He talked to [his wife], gave me a hug and left.
>
> I remember this day, because the next day was Saturday, and [the Petitioner's wife] was upset with her husband, so she had stopped by my house to talk to me.

Mr. Carl Almon had later came [sic] by my home to see if she was here with me. That was the last time I saw Mr. Carl Almon which was Labor Day weekend.

This affidavit was specifically discussed at trial. The day before trial, counsel for the Petitioner filed a "motion for alibi," relating the essential facts of Ms. Thome's affidavit. On the first day of trial, counsel for the Government noted that the Petitioner had just raised the issue of an alibi defense, despite the Government's request for such an alibi some three months earlier. Counsel for the Petitioner stated on the record that he had just received notice that Ms. Thome had made a statement,[7] and that he had attempted to secure her attendance at the trial or at least a personal interview with her, but that her nursing home refused to permit her to be interviewed or moved due to her failing health.

When counsel for the Government questioned the admissibility of the affidavit as substantive evidence, counsel for Petitioner said the matter was a "nonissue," that Ms. Thome was not listed on his witness list, and that "we weren't intending to use the statement at all." The Court confirmed with counsel for the Petitioner that he was unaware of the existence of Ms. Thome's statement until just before trial, noted that the Petitioner himself knew of the existence of her statement and of its helpfulness well before trial, and deferred ruling on the matter until it came up at trial. Ms. Thome's statement was not raised as an issue at trial.

The Petitioner claims that his counsel knew of the statement and the video tape "way ahead of the trial," and that the failure to properly investigate and deal with this information constitutes ineffective assistance of counsel. After careful

---

7. Counsel for the Government indicated at trial that the Petitioner's counsel stated to her that he had not seen the affidavit but was aware of its contents. The Petitioner alleges that Ms. Thome made a video-taped statement, but counsel for the Petitioner states in his affidavit that he has never seen this video tape or its contents.

review of the record, the Court concludes that the Petitioner's claim must fail.

■ First, an affidavit or other statement presented without the benefit of cross-examination cannot be used at trial as substantive evidence. Federal Rule of Criminal Procedure 26 specifically provides that, unless specifically permitted by a rule of procedure or evidence, "in every trial the testimony of witnesses must be taken in open court." There are exceptions to this rule, which are classified as exceptions to the hearsay rule where the witness is "unavailable." *See* Fed.R.Evid. 804. Assuming Ms. Thorne was unavailable for trial, her statement (affidavit or video tape) does not meet any of the exceptions provided by Rule 804(b); the Petitioner has not proven that it constitutes former testimony, was made "under belief of impending death," is a statement against interest, or is a statement of personal or family history.[8] Thus, the affidavit could only be used for impeachment purposes.

■ Likewise, Rule 807's "residual exception" does not serve to make the statement admissible. The statement could be of value as a material fact, but the Petitioner had other methods of obtaining this information, such as through the testimony of his wife, who he refused to permit to testify. In any event, it is clear from his affidavit that counsel for the Petitioner had serious reservations about the validity of Ms. Thorne's statement, believing that the Petitioner's wife "coached" her into preparing it. This in itself prevents the statement from having "equivalent circumstantial guarantees of trustworthiness."[9]

8. The full text of Rule 804(b) is as follows:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

(2) Statement under belief of impending death. In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death.

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

(4) Statement of personal or family history. (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or (B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

(5) [Transferred to Rule 807]

(6) Forfeiture by wrongdoing. A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.

9. The full text of Rule 807 is as follows:

A statement not specifically covered by Rule 803 or 804 but having equivalent circum-

The statement was not admissible, and thus counsel's failure to move for its admission is not error. *See United States v. Wilkes*, 20 F.3d at 653.

■ The suspect reliability of the statement is additional grounds for counsel not to have presented it in open court. The South Carolina Rules of Professional Conduct, S.C.App. R. 407, adopted by this Court via its local rules, *see* Loc.Crim. R. 57.I.8, F.R.D.E. IV, prohibit an attorney from "knowingly ... mak[ing] a false statement of material fact or law to a tribunal" and from "knowingly ... offer[ing] evidence that the lawyer knows to be false." *See* S.C.App. R. 407, Rule 3.3(a)(1), (4). Counsel's affidavit states that he "suspected that [Petitioner's] wife may have coached [Ms. Thome]," based on the Petitioner's conversation with counsel as well as "the sudden appearance of the affidavit." As such, counsel states that he could not "in good faith, put [Ms. Thome] on the stand." It would thus have been *improper* with this knowledge for counsel to have submitted the statement, and his refusal to submit it was not improper.

Finally, even accepting the Petitioner's arguments as true, the affidavit itself fails to call the jury's verdict into doubt sufficient to vacate the conviction. The affidavit, by its own terms, states that the Petitioner "rode by" and "honked his horn and waved" at Ms. Thome at some point between 3:35 pm and 4:45 pm on the date of the robbery. Ms. Thome then saw the Petitioner at a grocery store "45 minutes later." The time period stated in the affi-davit is far too vague to be considered proof that the Petitioner did not commit the robbery. The Petitioner could have seen Ms. Thome at 3:35 pm, on his way to commit the robbery, or on his way home from the robbery between 3:45 pm and 4:15 pm, or at some point after meeting with his parole officer at 4:15 pm. Neither the affidavit nor the Petitioner provides concrete evidence as to the location where Ms. Thome is alleged to have seen the Petitioner, or the proximity of this location to the Petitioner's place of work, the robbed post office, or the Petitioner's home. Simply put, the affidavit is too general to be of probative value to the Petitioner. The Petitioner has not demonstrated that the affidavit, even if considered to be true and construed in the light most favorable to him, presents a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir.1994).

- *Miscellaneous*

■ In his response to the Government's motion for summary judgment, the Petitioner alleges for the first time that he requested a face-to-face interview with the victims of the robbery, a voice identification examination, a polygraph examination, and a DNA test, all of which were refused by his attorney. The Petitioner fails to state specifically how these trial strategies would have changed the outcome of the trial. As noted, even assuming (without

stantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

deciding) that failure to investigate these issues is error, the Petitioner still bears a heavy burden to demonstrate that counsel's failure to investigate these issues creates "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Spencer v. Murray*, 18 F.3d at 233. The Petitioner has not done so in this case with his conclusory claims. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir.1991) ("bald assertions and conclusory allegations do not provide sufficient ground … to require an evidentiary hearing"; contrary rule would "encourage meritless petitions burdening judicial resources").

To the extent that the Petitioner alleges his counsel was ineffective based on constitutional considerations previously raised and which this Court has rejected, the concomitant claim of ineffective assistance must also fail. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir.1994) (noting that there can be no ineffective assistance of counsel in failing to raise an issue which is not legally viable); *United States v. Mikalajunas*, 186 F.3d at 493. In addition, the Petitioner has failed to demonstrate that counsel's failure to raise these rejected issues was unreasonable or that he suffered prejudice as a result. *See Mikalajunas*, 186 F.3d at 493 (also noting that "counsel's failure to pursue a basis of appeal by reason of a mere miscalculation of the likelihood of success does not consti-

tute constitutionally ineffective representation").

### Return of Property

As noted earlier, *supra* n. 1, the Petitioner filed a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e),[10] seeking the return of property allegedly taken in the search of his home. Case law is clear that this is typically a separate civil action, *see United States v. Jones*, 215 F.3d at 470, but to save the "form-over-substance" step of forcing the Petitioner to file an entirely new action, the Court ordered the Government to address the issue within the context of the habeas corpus action.[11] After some delay, the Government obtained an affidavit from one of the officers involved in the search of the Petitioner's home.

■■■ The Government correctly notes that, after a conviction, a criminal defendant is "presumed to have the right to the return of his property once it is no longer needed as evidence." *United States v. Lindsey*, 202 F.3d 261, 2000 WL 14171, at *1 (4th Cir. Jan.7, 2000) (quoting *United States v. Mills*, 991 F.2d 609, 612 (9th Cir.1993)). The movant must make out a *prima facie* case of lawful entitlement to the property, after which the Government must present evidence to show that it has a "legitimate reason to retain the property." *Id.* at *1. *See also United States v. Mettetal*, 2003 WL 21738300 (W.D.Va. July 21, 2003) (same).[12]

---

**10.** Rule 41 was amended and restructured in 2002, "to make it easier to read and apply its key provisions." *See* Fed.R.Crim.P. 41 advisory committee's note to 2002 amendment. The provisions for return of seized property are now found in Rule 41(g).

**11.** *Cf. Matthews v. United States*, 917 F.Supp. 1090, 1102–03 (E.D.Va.1996) (noting a District Court's "equitable" and "ancillary" jurisdiction over a return of property motion technically barred by civil forfeiture proceedings).

**12.** The Court recognizes that unpublished opinions are not binding precedent. However, under 4th Circuit Local Rule 36, unpublished opinions may be cited in certain circumstances: "if counsel believes, nevertheless, that an unpublished disposition of this Court has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well." Using this Rule as a guideline, this Court finds that the cited unpublished opinions are appropriate citations.

■ The first question which must be answered, however, is whether the Government even has the property in question in the first place. The Petitioner specifically alleges that "local, State, and Federal agencies who arrested" him seized "one complete knife set that are in [sic] color of gold," which is a "sacred" heirloom given to him by his mother. In later filings, the Petitioner goes so far as to allege that the county sheriff's deputies involved in the search "stole" the knife set.

As part of its search and seizure procedures, the Colleton County Sheriff's Office creates an "incident report," listing all items seized as a result of criminal investigations. In this particular case, the incident report indicates that Deputy Kent Tisdale seized "kitchen utensils" valuing approximately "$10.00." In a subsequent affidavit, Tisdale avers that he seized "common kitchen knives" from the Petitioner's residence, and "at no time did I or any member of the Colleton County Sheriff's Office seize any 'heirloom knives' or any knives that had value above that of the common kitchen variety."

A thorough search of the entire criminal record reveals that no knives of any type were submitted to the Court as evidence. In fact, aside from the allegation that the robbery was made at knife-point, there was no mention at trial of any specific knife. The only mention of the knives taken from the house was at the suppression hearing, when the postal inspector testified that the postmaster at the robbed post office was not able to "match" any of the knives taken from the house as being used in the robbery.

The evidence is clear that the knives were taken by *state* officials, not federal officials. The search warrant was obtained by Hampton County Sheriff's Deputies (the county where the Petitioner's residence was located), and the evidence taken from the house was taken and inventories by Colleton County Sheriff's Deputies (who were investigating the robbery). There is no indication that federal postal inspectors or any other federal agent ever took possession of the knives. Moreover, because the knives were not entered into evidence at the trial, the Government's attorneys never had actual or constructive possession of them, either.[13]

■ Under Rule 41(g), this Court cannot direct a person who is not a federal government agent to turn over any property. See *United States v. Oguaju*, 76 Fed. Appx. 579, 581 (6th Cir. July 9, 2003) (no indication that the United States was ever in possession of property in question, and noting that all evidence pointed to seizure and possession by *state* authorities, for which court could not grant relief); see *United States v. Solis*, 108 F.3d 722, 722 (7th Cir.1997) (items seized by state officials, not federal agents, and thus no relief available). The Petitioner may have a remedy in state court for the return of property, but that remedy does not lie in this Court.

Moreover, even assuming that the federal government *did* at one point possess the seized knives, the Court is unable to grant

---

**13.** The Government submitted a letter by postal inspector J.E. Costello which indicated that the Assistant United States Attorney in charge of the case "filed the evidence with the court," and later learned that it had been lost by the Court during a move to new facilities. The letter, however, does *not* indicate that the knives taken from the Petitioner's residence were given to the Government's attorneys and turned over to the Court. The fact that the knives were never admitted or marked as evidence furthers the notion that the knives were not part of the "evidence" filed with the Court which was later lost. *Compare United States v. Fabela–Garcia*, 753 F.Supp. 326, 328 (D.Utah 1989) (items "held" as "evidence" were in the constructive possession of federal prosecutors).

the Petitioner the relief he seeks. All references in the record of the knives' description clearly indicate that the knives were "ordinary" kitchen knives; there is no evidence that the knives taken were part of a knife set, were gold-plated, or had any other unusual qualities which would set them apart from normal silverware. The Petitioner's mere assertion that the knives were extraordinary is insufficient; the Court cannot require the Government to turn over a specific item for which there is no proof was taken. *E.g., Matthews v. United States*, 917 F.Supp. at 1103–04 (unsubstantiated claims that specific items were seized, without evidence of the government's actual seizure thereof, was insufficient). Again, the Petitioner may have an action in state court for the alleged cover-up and "theft" of the knives, but this Court has no authority to hear or decide it.

## CONCLUSION

Based on the foregoing, it is

ORDERED that the Respondent's Motion for Summary Judgment is granted; the Petitioner's motion for return of property is denied; all other pending motions are denied; and this action is ended.[14]

**IT IS SO ORDERED.**

---

14. On June 17, 2003, the Petitioner filed an "ex-parte motion" to "appear for the hearing. Before this Court." Pursuant to § 2255 Rule 8, the Court concludes that an evidentiary hearing is not required, and thus exercises its discretion to "make such disposition of the petition as justice shall require," without such a hearing. *Id.*